## Brown's Appeal.

A son being about to leave his father's house to learn a trade, the father verbally agreed if he would remain at home and work on the farm until he was twenty-one years of age, he would give him $1000. The son remained, and when he reached his majority, another verbal agreement was made, whereby he was to continue at home and work on the farm for the wages usually paid in the neighborhood. He remained for seven years, and when leaving, the father promised to give him $500 for his services during these years. Three years thereafter, the father finding he was insolvent, confessed a judgment to the son for $1500, upon which execution issued, and the father's personal property was sold. Subsequent execution-creditors claimed the fund, on the ground that the son's judgment was a fraud upon them and void. *Held*, that the consideration for such a preference was valid and the debt justly due, and the judgment given therefor was valid, and not a fraud upon creditors.

March 29th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Court of Common Pleas of *Chester county*: Of July Term 1877. No. 102.

Appeal of Samuel P. Brown from the decree of the court, confirming the report of the auditor appointed to distribute the proceeds of the sheriff's sale of the personal property of John Brown. It appeared that the appellant, when sixteen years of age, and living with his father on a farm, commenced negotiations with a party for

the purpose of learning a trade.    His father, being unwilling that he should leave home, verbally agreed to give him $1000, if he would remain at home and work upon the farm until he reached his majority.    This offer was made in the presence of the father's brother, and was accepted.    When appellant reached the age of twenty-one years, another verbal agreement was entered into with his father, under the terms of which the appellant was to receive the usual wages paid in the neighborhood, if he would continue to work on the farm.    He remained for seven years, and when he left his father promised to give him $500 for the work of those years. Three years thereafter, the father discovering he was insolvent, at the request of the son, gave him his judgment-note for $1500, payable on demand, which was entered upon the same day, and an execution issued thereon.    The personal property of the father was sold, and realized $772.90.    Before the auditor this fund was claimed by the appellant and three junior execution-creditors.    The auditor, inter alia, reported :

"Now what is the evidence in this case, touching the two claims, that it is alleged went to make up the $1500 judgment of Samuel P. Brown?    We will consider each claim separately.    First, as to the $1000 claim.    Samuel P. Brown testified that in the spring of 1861, when sixteen years of age, he contemplated learning a trade, but that his father desired him to remain at home, and work for him until he was twenty-one; offering, if he would do so, to give him $1000.    This offer he accepted, and remained with his father for the time specified.    The testimony of John Brown was to the same effect, he saying that 'the first debt to my son Samuel arose from a promise to give him $1000 in place of learning a trade.' As to the $500 claim, Samuel testified that after coming of age, he remained with his father until he was twenty-eight years old, when he went in the spring of 1873 to work for his uncle, Mendenhall Brown.    The $500 was for work done after coming of age, between 1866 and 1873.    No contract for wages was alleged, but he says, 'it was then (when about leaving home) just agreed upon as being $500.'    The testimony of John Brown relative to this claim was to the same effect.    Samuel further testified, 'when I lived with my father, I had a horse and carriage of my own part of the time; the balance of the time I used his, whenever I felt like it.    I lived in my father's family as a son, and was treated in every particular as such.    I went and came nights and Sundays as I pleased; not so much as other boys; didn't run about much through the week; did not keep any account of how much I worked or how much I idled; I took no note or written agreement about either the $1000 or $500.    I first suggested the giving of this judgment at home, about two weeks before it was given.    There was no interest in judgment, nor had there been any paid on either the $1000 or $500 up to that time.'

[Brown's Appeal.]

" Taking then, the testimony of Samuel P. Brown and of his father, John Brown, as entirely true, it, in the opinion of your auditor, shows that the giving of the $1500 judgment was an attempt to perpetrate a legal fraud. The promise to give the son $1000 for work done during his minority, when the father was entitled to the control of his child and the fruits of his labor, was without consideration, and amounted to nothing more than a promise to give his son that amount of money, which he failed to carry out until sixteen years afterwards, when he was in insolvent circumstances, as he admitted, and his son knew, and when any such gift was a legal fraud upon his creditors, and as to them void.

" As to the other sum, $500, which went to make up this judgment, there was no contract or agreement for wages either proven or alleged; the son remained at home and continued to work for his father, after he was twenty-one, the same as before; he lived in his father's family, not as a servant or laborer, but ' as a son, and was treated in every particular as such.' No accounts were kept, no memoranda of settlements made, no notes given, but when about to leave his father's house, ' it was just agreed upon as being $500,' that his father owed him.

" This, therefore, amounted to nothing more than a promise to make the son a gift of $500, which, remaining unexecuted until after the parent had become insolvent, was, as against his creditors, fraudulent and void."

The auditor, therefore, disallowed the claim of the appellant, and awarded the fund to the other execution-creditors, and directed that the costs should be paid by appellant. The latter excepted, and the court, Butler, P. J., dismissed the exceptions, and confirmed the report. This appeal was then taken, assigning this decree for error.

*Charles H. Pennypacker,* for appellant.—Does this relationship of parent and child repel the collection of an honest debt, and imply that the transaction here detailed is a fraud upon John Brown's creditors? The auditor, who is sustained by the court below, treats the $1000 promised to the minor as a mere gift, without consideration, because the father was entitled to his son's services, and was not bound to pay him. It is very well settled that when a contract is made between a minor and an adult, the adult is bound, though the minor may not be: Titman *v.* Titman, 14 P. F. Smith 485; Addison on Contracts, § 82; 1 Parsons on Contracts 330.

The conversation in 1861 between John Brown and his son Samuel was, in effect, an emancipation of Samuel. The relations between them assumed a new phase. A father may emancipate a minor child: Galbraith *v.* Black, 4 S. & R. 207; McCloskey *v.* Cyphert, 3 Casey 220; United States *v.* Mertz, 2 Watts 406. The amount due was fixed upon, settled and determined four years before

the judgment was given.   Such a liability can be enforced, and is made out by the evidence in this case: Neel's Adm. *v.* Neel, 9 P. F. Smith 349.

*William M. Hayes*, for appellees.—This judgment was confessed by a father to his son when the former was insolvent, and is clearly fraudulent and void as to creditors.   The finding of facts by an auditor, which has been approved by the court below, will not be disturbed by this court on appeal, unless for flagrant error.

Mr. Justice MERCUR delivered the opinion of the court, May 6th 1878.

This is a case of the distribution of the proceeds of the sheriff's sale of personal property.   The contention is as to the validity of the judgment in favor of the appellant against John Brown.   The auditor found it in law fraudulent and void.   The court overruled all the exceptions, confirmed the report, and decreed that the fund be paid on subsequent executions.   From that decree this appeal was taken.

The fund for distribution is $772.90.   The judgment of the appellant is $1500.   It was on a judgment-note executed and entered of record on the 13th December 1876.   Execution was issued thereon, and put in the hands of the sheriff on the same day.   The levy was made on the day following.   This execution was first in order of time.   The consideration of the judgment was services rendered by the appellant to his father, John Brown. $1000 thereof for services while he was a minor, and $500 for services after he was of full age.

That a father may so manumit his son as to authorize him to contract with an employer, and receive his earnings to his own use, is well established: Galbraith *v.* Black, 4 S. & R. 207 ; United States *v.* Mertz, 2 Watts 406.   He may do this, although he be insolvent: Holdship *v.* Patterson, 7 Id. 547.   Although he be legally entitled to the wages of his minor son, he is not bound to claim them for the benefit of his creditors: McCloskey *v.* Cyphert, 3 Casey 220.   In this last case it was said by Mr. Justice BLACK, " This emancipation of the son from the father's control may be as perfect where they both live together under the same roof as if they were separated.   The father's renunciation of all legal right to the son's labor is not the less absolute because other family ties continue unbroken."   He may so relinquish his right to the services of his minor son that he cannot re-assert that right either against the son or other person: Torrens *v.* Campbell, 24 P. F. Smith 470.

The uncontradicted evidence shows that in the spring of 1861, when the appellant was sixteen years old, he was negotiating with one Harris to learn a trade.   His father was unwilling that he

[Brown's Appeal.]

should leave home, and proposed, if he would not go, but remain with him, until he became of age, that he, the father, would give the appellant $1000. The son assented to this, and remained. This agreement is sworn to by both father and son, and by Mendenhall Brown, a brother of John's, who was present at the conversation, and heard the arrangement. Harris testified that in conversation he had that same spring with the father, in relation to the proposed bargain between the son and the witness, the father said he had arranged with his son to stay with him, and that he, the son, was to have $1000. The appellant afterwards made the same statement to the witness. About the same time William McFarlan swears the son informed him of this arrangement, and John D. Dorlan swears the father told him the same. The evidence of an agreement to pay for the appellant's services after he became of age is not so strong, nor need it be, as the father was not then entitled to his wages. Mendenhall Brown swears that when the bargain was made in 1861, the father told the appellant that after he became twenty-one, he would pay him what other people paid. The appellant testifies: "The spring I reached twenty-one years of age I had an agreement with my father. He agreed to give me as much as anybody else would give me if I staid on with him. * * * I went to work. * * * The wages in the neighborhood at that time were $225 to $240 per year." He continued in the service of his father seven years after he became of age, leaving in 1873. He further testified that when he left in 1873 it was agreed that these services should be $500, and his father agreed to allow him that sum. The father swore that he then thought, and always has since the work was done, that his services were worth more than $500.

No witness contradicts these facts sworn to in behalf of the appellant's claim. The auditor does not find they are not proved. On the contrary, he says "he has treated the testimony of Samuel P. and John Brown * * * as true." He appears to base his conclusion that the judgment is "in law, fraudulent and void," on other grounds. He rests it mainly on the circumstances under which the judgment-note was given. It is shown that then, John Brown was largely indebted, and far beyond his ability to pay. That he and the appellant expected other executions would be issued against the former, in a few days: and that this judgment was given with the intention of enabling the appellant to issue execution, in advance of those likely to be issue by other creditors. If, however, the consideration was honest and the debt justly due, it was no fraud on the other creditors to thus prefer the appellant. Except as against a bankrupt law, a debtor may prefer one creditor to another, and such preference is not fraudulent either in law or in fact: Uhler *v.* Maulfair, 11 Harris 48; Hart *v.* Covenhoven, 9 Id. 327; Hopkins *v.* Beebe, 2 Casey 85. A debtor may even pre-

[Brown's Appeal.]

fer a bona fide creditor, by a confession of judgment, although the claim was not enforceable at law: Keen *v.* Kleckner, 6 Wright 529. It therefore follows that undue effect was given to the fact that the judgment was confessed with a view of giving the appellant a preference over creditors. In so holding, it is not necessary to impair any of the authorities declaring the effect that should be given to an auditor's finding of facts: but we dissent from the legal conclusions deduced from those facts. All the facts found, did not justify the conclusion that the judgment was "in law, fraudulent and void."

The auditor has not found at what time, the debt due to any of the appellees, originated. A careful examination of the evidence fails to show, that in 1861, or 1866, or 1873, when John Brown made these several contracts with the appellant, that he was indebted to any other person who could be injured thereby. As then no just cause is shown for postponing the claim of the appellant, all reason for imposing the costs of the audit on him is removed.

> Decree reversed at the costs of the appellees; and it is now ordered, adjudged and decreed that the costs of the audit be paid out of the fund, and the residue thereof, to wit, $678.90, be paid to the appellant on fi. fa. No. 57, January Term 1877.