# Commonwealth *v.* Philadelphia County, Appellant.

| 157 | 531 |
|-----|-----|
| 157 | 556 |
| 157 | 531 |
| 200 | 310 |
| 157 | 531 |
| 205 | ¹350 |
| j205 | ¹357 |
| j205 | ¹359 |
| 157 | 531 |
| e208 | ¹302 |
| e208 | ¹307 |
| j208 | ¹309 |
| f208 | ¹327 |

*Taxes—Collection—County treasurer—Agency—Act of June 1, 1889.*

Where a county treasurer is required to assess, collect and remit the state tax to the state treasurer, he is not the agent of the commonwealth, but of the county, until the tax is paid by him to the state treasurer. Nothing relieves the county from liability to the state for the tax, but actual payment of it to the state treasurer. Com. v. Schuylkill Co., 36 Pa. 524, followed; Phila. v. Martin, 125 Pa. 583, distinguished.

*Embezzlement—Wrongful appropriation of payment—Trust—Suit against sovereign.*

Where a county treasurer applies the payment of a certain portion of the state personal property tax received by him on another account with the commonwealth, for which the county is in no way responsible, a claim that such an appropriation is an embezzlement by the treasurer as a trustee of county funds, and that the commonwealth holds the money on the same trust, cannot be sustained. Such a claim raises a distinct cause of action which the county as a subject cannot sustain against the commonwealth as the sovereign.

*Personal property tax under act of June 1, 1889.*

Under the act of June 1, 1889, P. L. 426, the county is not entitled to receive one third of the personal property tax until it has actually collected and paid the whole tax to the state, but the commonwealth may anticipate the return payment, and if it does so it cannot compel the county to return it.

*Interest on personal property tax.*

Where through neglect of the commonwealth's officers, the county treasurer fails to make a prompt return of the state personal property tax, and subsequently embezzles the fund, the county is not liable for interest on the one third of the fund which it is entitled to receive back from the state.

*Taxation—Penalties—Attorney general's commissions.*

The attorney general's commissions charged on appeal from tax settlement are not payable personally to the attorney general, but go into the state treasury as a penalty on the debtor for tardiness in the payment of his taxes.

Where a county treasurer embezzles the state personal property tax paid to him, and a settlement is made by the commonwealth against the county for the amount of the tax, but without the county officers knowing of the settlement until several months thereafter and without their having an opportunity to investigate the matter, the attorney general's commissions should not be charged against the county in an action of assumpsit to recover the amount of the settlement.

*Practice—Trial by court without jury—Evidence—Review.*

In reviewing a case tried without a jury under the act of 1874, on assign-

ments of error to the rejection of the testimony, the Supreme Court must treat the offers as stating the facts. Their relevancy, the inferences to be drawn from them, and the legal conclusions, are for the court.

*Practice— Tax settlement—Appeal—Pleading—Evidence.*

In an action of assumpsit to recover the amount of a tax settlement against a county where the case has been tried as if the defendant had put in the plea of payment with leave to give special matter in evidence, the county may prove, notwithstanding no appeal was taken from the settlement, any facts which would go to show that the commonwealth ought not, in equity and good conscience, to recover the whole or any part of the claim. In such a case the Supreme Court will mould the judgment so as to prevent manifest injustice.

Argued May 31, 1893. Appeals, Nos. 29 and 37, May T., 1893, by plaintiff and defendant, from judgment of C. P. Dauphin Co., Sept. T., 1891, No. 303, for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for amount due on tax settlement.

The case was tried without a jury under act of 1874.

At the trial defendant made the following offers:

Defendant offered to prove that from the beginning of the year 1891 until he quit his office, John Bardsley collected for the commonwealth of personal property taxes $289,232.96, no part of which was paid by him into the state treasury, and most of which was embezzled, stolen and lost, and the said embezlement, theft and loss having been made possible by the negligence of the accounting officers of the commonwealth, and not through any fault or neglect of the city or county of Philadelphia. Refused; exception. [1]

Defendant then offered to prove that by the premature, unwarranted and illegal action of the state's officers in paying to John Bardsley $420,000 of school moneys several months before the same were due from the state to the city, the said John Bardsley was enabled to embezzle the same, resulting in a loss of that amount to the city and county of Philadelphia through the illegal acts of the state's officers. Refused; exception. [4]

Defendant then offered to prove that upon receipt of the precept from the state treasury, showing the amount of personal property tax to be collected for the state from the county of Philadelphia, the said county did, through its board of revision of taxes and its machinery and proper agents and officers,

assess and collect said taxes from the taxable inhabitants of the city and county of Philadelphia; that the said moneys were collected by the receiver of taxes, and by him paid to John Bardsley, who was assumed to be the officer of the state authorities to receive them; that the said moneys were kept by him in the account in which only moneys received by him for the state were kept. This was all before the 1st of January, 1891. That of said moneys so received by John Bardsley, $145,000 were actually paid by him into the state treasury, but applied, not to the payment of personal property tax, but to his account with the commonwealth for moneys received for licenses. Of that amount of $145,000, $70,000 was paid subsequently to January 8, 1891, the date of the settlement of the account in suit, and $75,000 prior to said date. Refused; exception. [5]

That the balance of said personal property tax so collected from the county and paid to John Bardsley, county treasurer, was, together with other large sums, embezzled by him, and that such embezzlement was made possible by the acts, laches and acquiescence of the accounting officers of the commonwealth. That the said money was lost in the Keystone Bank, which failed on or about the 29th day of March, 1891, and that the unlawful acts, laches and acquiescence of the state officers aforesaid were in part subsequent to the settlement of the account in suit. That said acts, laches and acquiescence on the part of the accounting officers of the commonwealth were made the subject of a special proclamation or message by the governor of the commonwealth, to the senate of Pennsylvania, which he had called together in extraordinary session for the purpose of inquiring into said matters, and that said inquiry was duly made thereof. Refused; exception. [6]

Defendant then offered to prove that, as charged by the governor of the commonwealth in his message to the senate under date of October 13, 1891:

" During most of his official term John Bardsley was permitted to retain and use a very large amount of money collected for and payable into the state treasury, for which he neither made nor was even called upon and required to make the account directed by law. For the collection of the moneys so retained by him no such legal steps were ever taken as are man-

datory upon the state treasurer and auditor general; and he is shown to have embezzled them to the amount of more than a million and a quarter of dollars. The memoranda and entries made in his books at the time by John Bardsley, and when he had no apparent reason to expect public disclosure or adverse use of them, indicate that, apart from the salary, fees and commissions of his office, to which he was entitled by law, he made as interest, dividends and bribes nearly $300,000. The greater part of this was paid to him for the use of the state moneys, which he was allowed to retain in his possession, and for his exercise and abuse of powers in association with and under the control of the auditing and fiscal departments of the state." Refused; exception. [7]

" Defendant offers to prove that, as charged by the governor in his message of October 13, 1891:

" That of the moneys collected by John Bardsley for the commonwealth of Pennsylvania, he has failed to pay over the following amounts:

| | |
|---|---:|
| Personal property tax (1890) . . . | $622,013 11 |
|     "      "      "   (1891) . . . | 289,232 96 |
| License tax (1890) . . . . | 367,604 18 |
|   "    "   (1891) . . . . . | 1,497 54 |
| Municipal loans tax (1890) . . . | 86,030 80 |
| | $1,366,378 59 " |

Refused; exception. [8]

Defendant then proposed to prove that, as charged by the governor in his message of October 13, 1891:

" Nearly all the moneys collected for the commonwealth on account of personal property tax are received by the city and county treasurer, and were in particular received by John Bardsley, before the first of August in each year. The act of June 1, 1889, P. L. 427, under which these taxes are levied, prescribed that the several cities and counties collecting them ' on the first Monday of September shall pay into the state treasury all such sums of money as may then have been collected, and shall on the second Monday of November immediately following in each year complete and pay into the state treasury the whole amount remaining unpaid, and in default thereof, it shall be the duty of the auditor general to add ten per cent penalty to

each county or city on all taxes remaining unpaid on the second Monday of November in each year.' Of the moneys thus collected for the personal property tax of 1889 by John Bardsley (the commonwealth's share amounting to $530,044.27), only $200,000 were paid in before the second Monday of November. The sum of $124,500 was paid in January, 1890, and the balance, $170,895, was retained by John Bardsley for his own personal use until November 26, 1890, more than a year after the same was due and payable to the state, and several months after the collections for the ensuing year were in his hands. This money of the commonwealth was allowed to remain in his possession and under his control with the knowledge, consent and permission of the auditor general and state treasurer. No settlement of the same was ever transmitted to the attorney general for collection, no penalties nor interest were charged against John Bardsley, and no commissions were abated by reason of his default.

" Of the taxes collected for 1890, amounting to $785,753.27, no portion was paid on the first Monday of September, nor on the second Monday of November following. On December 31, 1890, $150,000 were remitted to the commonwealth by John Bardsley, but on the same day this was returned to him by the fiscal and auditing officers of the state. On January 13, 1891, it was again paid into the state treasury by Bardsley, and after that time no portion of the personal property taxes collected for 1890 were paid into the state treasury, and $632,012.11 of public moneys have on this account been embezzled, stolen and lost." Refused; exception. [9]

Defendant then offered to prove that, on the 22d of December, 1890, the auditor general wrote to John Bardsley a letter, saying, " I find I can get along without any money this month from you," Bardsley having in his hands at that time of moneys collected for the commonwealth $1,456,758.06, nearly all of which had been collected by him prior to August 1, 1890, and most of which had been embezzled, stolen and lost. Also, that on Nov. 24, 1890, the auditor general advised John Bardsley to " allow the city's share of the 1890 tax to remain in his hands until December." Refused; exception. [10]

Defendant then offered to prove that from the beginning of the year 1891 until he quit his office, John Bardsley collected

for the commonwealth of personal property taxes $289,232.96, no part of which was paid by him into the state treasury, and most of which was embezzled, stolen and lost, and the said embezzlement, theft and loss having been made possible by the negligence of the accounting officers of the commonwealth and not through any fault or neglect of the city or county of Philadelphia. Refused; exception. [11]

Defendant then offered to prove that, as charged by the governor in his message of Oct. 13, 1891:

" Of the license moneys collected by Bardsley for the commonwealth in 1889, amounting to $572,339.36, most of which was collected before July 1, 1889, he was permitted to retain in his possession and for his own private use for more than a year $237,078.48, for which no settlement against him was ever transmitted to the attorney general for collection, no interest or penalties were imposed upon him, and there was no abatement of his commission for this default.

" Of the $627,604.18 collected by him on the same account for the year 1890, most of which was paid to him before June 1, 1890, he was permitted by the fiscal and auditing authorities to retain the whole amount in his hands until Feb. 27, 1891, when he made a payment of $100,000, and on March 13, 1891, of $160,000, leaving a balance of $367,604.18 of the commonwealth's money, for all of which he was indebted to it at the time of his imprisonment, and for no part of which, except by the bond of $120,000, is the commonwealth secured.

" During so much of the year 1891 as John Bardsley was in the exercise of the duties of the office of city treasurer, of the moneys he collected for licenses he claims a credit of the greater part for expenses and fees of mercantile appraisements.

" For the tax on municipal loans payable from the city to the state, John Bardsley received from the city of Philadelphia on June 26, 1889, $40,580.40, and on December 30, 1889, $39,524.77, making a total of $80,103.17, which he was permitted to retain in his own hands and for his own personal use until Sept. 30, 1890, when it was paid over.

" On June 6, 1890, he received from the city of Philadelphia for like purposes $47,444.88 ; and on December 5, 1890, he received $43,167.75, making a total of $90,612.63, all of which he was allowed to retain for his own personal use, all of which

he embezzled, and no portion of which was ever paid into the state treasury." Refused; exception. [12]

Defendant then offered to prove that by the premature, unwarranted and illegal action of the state's officers in paying to John Bardsley $420,000 of school moneys several months before the same was due from the state to the city, the said John Bardsley was enabled to embezzle the same, resulting in a loss of that amount to the city and county of Philadelphia through the illegal acts of the state's officers. Refused; exception. [13]

The facts were found in the following opinion of the court, by McPherson, J.:

"1. On January 8, 1891, the auditor general and state treasurer settled an account against Philadelphia county for tax on personal property. The county was charged with $772,013.11, the amount of said tax for the year 1890, as fixed by the board of revenue commissioners, less the commissions due the county treasurer for collection; and was charged also with $170,895.48, a balance due upon the settlement immediately preceding, making a total of $942,908.59. Credit was given for certain payments amounting to $320,895.48, and thus the account showed a balance against the county of $622,013.11.

"2. The county had due notice of this settlement, but did not take an appeal therefrom.

"3. On January 18, 1891, the commonwealth received from the treasurer of the county $150,000 on account of the tax charged in the said settlement.

"CONCLUSIONS OF LAW.

"This settlement being unappealed from, it is conclusive upon the defendant, as a line of decisions has determined: Spangler v. Com., 8 Watts, 57; Com. v. Reitzel, 9 W. & S. 109; Hutchinson v. Com., 6 Pa. 124; Northampton Co. v. Herman, 119 Pa. 379; Com. v. Luzerne Co., 1 Mona. 418. Unless unusual circumstances existed it could show nothing except payment made after the settlement; and for this reason almost all of its offers of evidence were incompetent.

"[One offer did propose to prove that $70,000 was paid into the state treasury after the date of the settlement, and that this sum had been collected from the tax on personal property; but it also appeared from the offer that the defendant paid the money on a different account; namely, on the account for li

censes, and that the commonwealth's officers did not know from
what source the money was derived.    Under these circum-
stances it is clear that the payment cannot be credited to the set-
tlement in suit.    It was a misapplication of the money by the
county treasurer, but the state was not a party to it and is not
bound to set it right.]  [16]

" [With regard to the payment of $120,000, which was made
to the commonwealth in October, 1891, (also after the date of
this settlement,) by the sureties of the county treasurer, it is
enough to say that it was made generally, the treasurer being
largely indebted on several distinct accounts, and that it was
not directed to be applied, and was not in fact applied, to the
settlement in suit.]  [17]

" A word or two may be added to explain the rejection of the
commonwealth's offer to prove that on Dec. 30, 1890, the de-
fendant paid $150,000 on account of this tax, and that this sum
was repaid to it on Dec. 31, 1890, by the commonwealth's offi-
cers as part of the one third of the tax for 1890, to which it was
entitled by section 16 of the revenue act of 1889, P. L. 426.    It
was intended to argue that this repayment was premature, and
therefore improvident, because section 16 requires the counties
to pay first into the state treasury the full amount of the tax
before they become entitled to receive for their own use one
third thereof, as provided by the act; and, therefore, that the
subsequent payment also of $150,000 made by the defendant
on January 18, 1891, ought not to be allowed as a credit upon
the settlement, but ought to be considered as a mere return of
the money improvidently repaid to the county on December 31st.

" We do not think it necessary to decide whether section 16
of the act of 1889 ought to receive the construction suggested.
This much at least is clear, and in our opinion is decisive of
the controversy : The payment of January 18th was made by
the county and received by the commonwealth as a credit upon
this particular account for tax on personal property, and not
as a repayment of money improvidently advanced by the state.
We think, therefore, that it cannot now be diverted by the com-
monwealth to another purpose.    When made it was a proper
payment on account of this tax, and it would not be just to
receive it as such and afterward to apply it otherwise than as
directed by the county and agreed to by the state.

" Moreover, to refuse the defendant credit for this payment would allow the commonwealth to recover interest on money already in its treasury, and would charge the defendant with interest on money which it has already paid. This result may sometimes be unavoidable, but any reasonable view of the facts which will prevent it would properly commend itself to a court which is bound to decide these disputes not only according to law but also according to equity."

Judgment for plaintiff as stated in opinion of Supreme Court. Plaintiff and defendant both appealed.

*Errors assigned* by plaintiff were rejection of evidence as to payment of $150,000, allowance of credit to defendant for same and refusal of interest on same to plaintiff.

*Errors assigned* by defendant were (1, 4–13) rulings, quoting offers; (16, 17) conclusions of law as above, quoting them; (18) in not giving credit to defendant, under § 16 of act of June 1, 1889, P. L. 426, for $159,937.07, together with interest thereon from April 8, 1891; (19) in charging interest against defendant from April 8, 1891, upon $159,937.07.

*M. E. Olmsted* and *Lyman D. Gilbert, John H. Weiss* with them, for appellant.—The county treasurer was the agent of the commonwealth : Phila. v. Martin, 125 Pa. 583.

If John Bardsley did not receive the tax upon personal property as the agent of the state, which we contend that he did, he received it as the trustee of the county of Philadelphia, to be used by him in discharging the tax claim upon it, and when he misappropriated that money the state could not profit by his embezzlement, but received that money in trust for the appellant : Pennell v. Duffell, 4 De G. M. & G. 372.

When the commonwealth received $145,000 of the amount of this tax so assessed and collected by the county of Philadelphia, appellant was entitled not only to a credit of $145,000, but also to a further credit of one third of that amount, with interest thereon, as the compensation fixed by § 16 of the act of assembly, in the assessment and collection of that portion of the tax.

*W. U. Hensel,* attorney general, *James A. Stranahan,* deputy attorney general, with him, for appellee.—The settlement was conclusive: Com. v. Reitzel, 9 W. & S. 112 ; Spangler v. Com.,

8 Watts, 57; Hutchinson v. Com., 6 Pa. 127; Com. v. Far-
relly's Adm'rs, 1 P. & W. 52; Com. v. Pittsburgh & Connellsville
R. R., 2 Pearson, 390; Lehigh Crane Iron Co. v. Com., 55 Pa.
448; Spangler v. Com., 8 Watts, 57; Com. v. Aurand, 1 Rawle,
282; Phila. v. Com., 52 Pa. 454; Hultz v. Com., 3 Grant, 61;
Hays v. Com., 27 Pa. 275; Porter v. School Directors, 18 Pa.
144; Com. v. Freedley's Ex., 21 Pa. 33; Northampton Co. v.
Yohe, 24 Pa. 305; Fitler v. Com., 31 Pa. 406; Blackamore v. Al-
legheny Co., 51 Pa. 160; Phila. v. Com., 52 Pa. 451; Burns v.
Clarion Co., 62 Pa. 422; Clatfelter v. Com., 74 Pa. 74; Sig-
gins v. Com., 85 Pa. 278; Com. v. R. R., 2 Pears. 389.

The county and not its treasurer is primarily liable to the
commonwealth for the personal property tax: Schuylkill Co.
v. Com., 36 Pa. 524; Hughes v. Com., 48 Pa. 66; Com. v.
Phila., 9 Cent. R. 215; Mayor of New York v. Davenport, 92
N. Y. 604.

The commonwealth is not liable for the laches or neglect of
its officers: People v. Jansen, 7 Johns. 332; U. S. v. Kirkpat-
rick, 9 Wheat. 720; U. S. v. Vanzant, 11 Wheat. 184; Com.
v. Baldwin, 1 Watts, 55; Haehnlen v. Com., 12 Pa. 618; Com.
v. Wolbert, 6 Bin. 292; Easton Bank v. Com., 10 Pa. 451;
Del. Div. Canal Co. v. Com., 50 Pa. 408.

If the settlement unappealed from was conclusive, the offers
of defendant below to show certain payments before the date
of that settlement were certainly irrelevant and were properly
excluded by the court and their exclusion was not error:
Schuylkill Co. v. Com., 36 Pa. 537.

OPINION BY MR. JUSTICE DEAN, October 2, 1893:

The form of the action in the court below was assumpsit,
for recovery of tax on personal property for year 1890. By
the act of June 1, 1889, the commonwealth, for her own use,
imposes certain taxes on personal property in the counties and
cities within her limits. The same act directs how the taxes
shall be assessed, collected and paid into the state treasury.
After providing for assessment, it directs: (1) It shall be col-
lected by the different counties and cities. (2) On the first
Monday of September in each year, such amounts as have then
been collected for that year shall be paid to the state treasurer.
(3) On the second Monday of November following, the re

mainder shall be paid. (4) Then, the state treasurer shall return to the county or city one third the net amount of taxes thus paid into the state treasury; the purpose of such return being the reimbursement of the county or city for the expenses incurred in the assessment and collection of the tax.

Under the act of March 30, 1811, it was made the duty of the auditor general to examine and adjust the accounts between the commonwealth and the counties, according to law and equity. So, on the 31st of December, 1890, the auditor general settled and adjusted the commonwealth's account against Philadelphia county for the personal tax of the year 1890. The following is an abstract of that settlement:

Amount of tax for year 1890, .   . $779,811.22
Deduct treasurer's commission 1 pr. ct.   7,798.11–$772,013.11
Add balance at settlement March 7,
1890,   .   .   .   .   .   .                     $170,895.48

                                                 $942,908.59
By payment into state treasury on ac-
count of state tax,   .   .   .                   320,895.48

        Net balance due,   .       $622,013.11

To this settlement the auditor general appended this explanation:

" Note : The board of revenue commissioners decided that the act of June 1, 1889, requires the several counties of the commonwealth to pay into the state treasury the entire amount of tax for the year 1890, less county treasurer's commission of 1 per cent. After this is done, the auditor general will issue his warrant for $259,937.07 in favor of your county, being one third of said tax per section 16, act of June 1, 1889. On December 30, 1890, the auditor general issued a warrant in favor of above county for $150,000 as payment in part of above $259,937.07.          Thomas McCamant,
                                  " Auditor General."

From this settlement no appeal was taken, and the balance, $622,013.11, not having been paid, the commonwealth, on the 31st of August, 1891, brought this suit against Philadelphia to enforce payment. The case was tried without a jury, under the act of 1874, before Judges Simonton and McPherson.

On the trial, these were the facts which either were not disputed or must now be taken as established :

John Bardsley had been elected and was duly qualified as treasurer of the county of Philadelphia for three years from the first Monday of January, 1889, and continued in the office until May 20, 1891, when he resigned. The state had opened with him four separate accounts : Personal property tax ; license tax ; mercantile tax ; loans tax. As to the license and mercantile tax, he acted solely for the state. By the express terms of the act, the taxes on personal property were transmitted through him to the state treasury. While in office, he received large sums of county and state money from both sources, and became a defaulter as to each in the sum of more than half a million dollars. The quarterly returns and payments directed by the act of June 7, 1887, were not demanded or enforced against him by the auditor general, and he was permitted to retain large sums after they should have been paid into the state treasury. He appropriated to his own use, indiscriminately, the money of the commonwealth and county, and both will be losers to the amount of many hundreds of thousands of dollars by his dishonesty. The money claimed in this suit was paid to him by the receiver of taxes for the county and is lost, for he is now in prison for a long term, and is hopelessly insolvent. One hundred and forty-five thousand dollars of the money received for taxes on personal property for the year 1890 was paid by him into the state treasury, and appropriated on another account of the commonwealth by his directions, but the commonwealth's officers had no knowledge of the fact that it was taken from the personal property tax money. Seventy-five thousand dollars of this sum was paid prior to the settlement by the auditor general, and $70,000 afterwards. The sureties of John Bardsley on his bond to the commonwealth paid the amount of the bond, $120,000, in October, 1891, to the commonwealth, and that sum was applied in part payment of indebtedness of Bardsley on other accounts.

In reviewing a case tried under the act of 1874, on assignments of error to the rejection of testimony, we must treat the offers as stating the facts. Their relevancy, the inferences to be drawn from them, and the legal conclusions, are for the court.

The first assignment of error pressed in the argument by coun-

sel for Philadelphia county, appellant, is to the exclusion of the offer to prove that the personal property tax for 1890 was assessed and collected by the county, and paid over to John Bardsley, county treasurer. The conclusion sought to be drawn from the facts is that, under the act of 1889, the county treasurer was the agent of the commonwealth, and the payment to him discharged the county.

If this were a new or doubtful question, the very large amount involved would impel us to a careful consideration of the able argument of counsel for appellant. But, while it is plausible, it leads to a conclusion which is not the law. More than thirty years ago, after most careful consideration, both by the court below and this court, of the whole question, in Commonwealth v. Schuylkill County, 36 Pa. 524, it was decided, under similar facts, the county treasurer was not the agent of the commonwealth, but of the county, until the tax was paid by him to the state treasurer. The act of assembly of 29th of April, 1844, which provided for the assessment, collection, and payment into the state treasury by each county of its quota of state tax, as respects the question before us, is substantially the same in its provisions as the act of 1889. Under each act, the several counties are required to assess, collect and remit the tax to the state treasurer. The same defence was made by the county in that case as in this, and the late Judge PEARSON, who presided, answered it thus: "It is also urged that in collecting state taxes, the county treasurer acts as agent for the state, and not for the county, and no advantage can be taken by the state of the delinquency of her own agent. The law in force since 1834 required the county treasurer to collect state taxes, and to give bond for the faithful performance of his duty. The people of the county alone have authority to select the individual who shall perform that duty, and, when selected, none other can be employed. They must take care whom they choose for that purpose. To our mind, there is not even the semblance of hardship in making the same persons who select the agent responsible for his acts. It is no new duty thrown on the officer after his election ; the people choose him, with full knowledge that he must receive the state as well as the county funds. The liability is not, however, put on that position, but on the positive words of the act of assembly, which holds the county responsible for the taxes until paid into the state treasury."

On appeal to this court, the judgment was affirmed, and it was said by Justice STRONG, who delivered the opinion: "We consider it perfectly clear that the county is made responsible to the state for the quota of tax assessed against it, from which it cannot be discharged but by payment into the state treasury. If the collectors fail to collect the taxes due the state, the county treasurer must pay the amount out of any money in the treasury. If the taxes are collected, but not paid over by the county treasurer, he is responsible for the interest which the county may be obliged to pay, not liable to the state, but to the county."

It was settled by that case, that, as to taxes assessed against the county, the county treasurer, in receiving and paying them over to the state, is the agent of the county. Nothing relieves the county from liability to the state but actual payment to the state treasurer. The decision has been followed since without interruption, and must be considered the law, binding on all the courts of the commonwealth until the legislature, by distinct enactment, establishes a new line at which the duty of a county treasurer ends, and his power and responsibility as an officer of the commonwealth begin.

Philadelphia v. Martin, 125 Pa. 583, cited by counsel for the county, is not in conflict with Schuylkill County v. The Commonwealth, for the question there was altogether different from this. It was: Does the commission which the state is required to pay to the county treasurer belong to the officer or to the county? The answer was, to the officer. The decision is authority on that point alone.

It is further assigned for error, that $145,000 of the personal property tax received by Bardsley was applied by him on another account with the commonwealth, for which the county was in no way responsible. It is argued that such an appropriation was an embezzlement by him as a trustee of county funds, and that fact now appearing, the commonwealth holds the money on the same trust. Assuming that a knowledge on part of the state treasurer of such misappropriation of the county's money, at the time it was made, would have turned the commonwealth into a trustee for the county, there is no pretence here that the state treasurer knew from what fund this money was taken when it was paid by Bardsley. It was applied as he directed

on an account which showed a large balance against him. Under all the facts developed, it is doubtful if anything would have been gained by either party by identifying misappropriations of the defaulting officer. He seems to have used county money to pay the state, and state money to pay the county, with an impartiality measured only by his necessities and the amount within his reach.

But aside from this, the claim raises a distinct cause of action, not entering into the settlement and adjustment authorized to be made by the auditor general. To make it the subject of inquiry here, would, in effect, be to sustain a suit by the county against the commonwealth for the tortious act of the county's agent in another transaction. Under such a construction of the act of 1811, holding on to taxes when paid, would require greater vigilance than collecting them when assessed; instead of money in the treasury determining the commonwealth's ability to pay for public purposes, it would only show the amount on hand, subject to depletion for unknown claims. We think the court very properly declined to go into an inquiry which could not have profited defendant. The authorities cited by the learned counsel for appellant are all cases where the suit was by the beneficiary against an individual depositary of the trust fund, and therefore do not rule the case before us. The subject can always be sued either at law or equity ; the sovereign, never except by express statutory permission.

The next error complained of by the county, is the refusal of the court to enter a credit for the one third of the full amount of personal property tax assessed for the year 1890, under the 16th section of the act of 1889. This section directs : " That one third of the net amount of tax . . . . that is collected and paid into the state treasury by a county . . . . shall be returned by the state treasurer to such county . . . . for its own use in payment of the expenses incurred by it in the assessment and collection of said tax."

The amount of tax for 1890, as fixed by the board of revenue commissioners, was $779,811.22. If this amount had been paid into the state treasury, then the county would have been entitled to an immediate return of one third, and this, according to the computation made by the revenue board, as appears by the note appended to their settlement, was $259,937.07.

The construction put upon this provision of the act by the court below is doubtless correct as an interpretation. The intent was to stimulate prompt payment by the counties of the state's portion of the tax ; and to that end, the county was not to get one third until it had collected and paid the whole. ·

But the commonwealth had returned $150,000 ; this was claimed to be an improvident payment, and the commonwealth asked that it be repaid. The court refused to charge this back to the county as a premature and illegal payment. The commonwealth having chosen to anticipate the return payment to the amount of $150,000, the demand now that it be paid back is not reasonable, in view of the fact that no question is raised as to the ability and willingness of the county to establish its right to the money by paying into the treasury the whole amount of the personal property tax yet unpaid, as soon as the amount is finally determined. The court below, even on a strict interpretation of the law, very properly declined to disturb a payment which the commonwealth chose to make.

But the county claims a credit for the $109,937.07 remainder of the one third. This claim was not sustained, because, as the court below held, the settlement, as shown by abundant authority, was conclusive unless appealed from, and unless unusual circumstances existed the defendant could show nothing except payment after the settlement.

Judgment was accordingly entered against the county on this statement of the account :

| | |
|---|---:|
| Balance on settlement, . . . . | $622,013.11 |
| Payment January 18, 1891, . . . . | 150,000.00 |
| Balance, . . . . . | $472,013.11 |
| Interest at 6 per cent from April 8, 1891, to April 18, 1893, . . . . . | 57,428.42 |
| Attorney general, . . . . . | 23,600.65 |
| Judgment entered against county for, . | $553,042.18 |

This is an action of assumpsit and gives effect to the same principles as those administered in a bill in equity. Although there is no formal plea, the case has been heard as if defendant had, under the old system of pleading, put in the plea of payment with leave to give the special matter in evidence. Under this plea the county could prove any facts which would go to

show that plaintiff ought not, in equity and good conscience, to recover the whole or any part of the claim. While it is true, as has been more than once said, "judicial equity is not as broad as natural justice," yet it seems to us, judicial equity, having a due regard for the law, can take notice of the facts in this case and so mold its decree as to prevent manifest injustice. Look at the facts as offered to be proven at the trial, and which are really not disputed by the commonwealth. The county, through its proper officers, before the 1st of January, 1891, had assessed and collected the entire $779,811.22, personal property taxes for the year 1890, and paid them to John Bardsley, the county treasurer; the law required quarterly returns and payments by him to the commonwealth of all moneys received by him for use of commonwealth, and peremptorily enjoined payment of this particular tax, not later than the first Monday of September and second Monday of November. The county had, up to that point, performed its whole duty. But the law is settled, that Bardsley was the agent of the county, and therefore the responsibility of the county did not end until the money reached the state treasurer. The commonwealth had a right to insist on a strict compliance with the law, nay, it was her duty to do so; but, acting through her own officers, she did not so insist; on the contrary, it was proposed to prove that this money was, with the knowledge and consent of her officers, retained by Bardsley. We recognize fully the law, that laches cannot be imputed to the commonwealth, and her rights cannot be destroyed by the neglect of her agents. The United States v. Kirkpatrick, 9 Wheaton, 720, is the leading authority for this principle. It has been followed not only in this, but in all the other states of the Union. Its place in the law of the land is too firmly fixed to be shaken by the hardship of a particular case. But while the commonwealth cannot lose by the neglect of her own officers, and the county must, in this case, lose, it does not follow, under such circumstances, the commonwealth shall be the gainer. She is entitled to have put into her treasury just the amount of taxes which would have been there, if she had rigidly insisted on a compliance with the law. Taking the settlement of the 31st December, 1890, as fixing the rights of the commonwealth and the liability of the county as of that date, then what would

have been the situation if the commonwealth had demanded an immediate compliance with its terms?

| | |
|---|---:|
| The city owed on personal tax for 1890, . | $779,811.22 |
| If the commonwealth had demanded payment, instead of waiving compliance with the law, Bardsley would have paid into the state treasury that amount, and the commonwealth would have returned to the county one third, or     .   .   . | 259,937.07 |

| | |
|---|---:|
| Leaving in the state treasury the two thirds or   .   .   .   .   .   .   .   . | $519,874.15 |

This is every cent which the commonwealth, under the law, had the right to retain of the county funds, if she had rigorously enforced payment; if the county's defaulting officer had paid over the money placed in his hands, which the commonwealth permitted him to hold, neither would have lost on the personal property tax for 1890. In equity, all the commonwealth can reasonably ask is to be placed in precisely the same position she would have been in, had her officers vigilantly performed their duty, and Bardsley had honestly performed his.

That would leave the account stand thus:

| | | |
|---|---:|---:|
| Balance at settlement,    .    .    .    . | | $622,013.11 |
| Deduct amount paid January 18, 1891, . | | . 150,000.00 |
| | | $472,013.11 |
| One third amount of tax to be returned,     .   .   . | $259,937.07 | |
| Deduct amount returned 31st Dec., 1890, .   .   . | 150,000.00 | 109,937.07 |
| Balance,   .   .   . | | $362,076.04 |
| Interest from April 8, 1891 to Oct. 2, '93, | | 53,949.32 |
| Total amount due commonwealth on judgment,     .   .   . | | $416,025.36 |

And for this amount only judgment should be entered.

By this modification the commonwealth loses nothing. She fails to gain interest on $109,937.07, principal, which, if it had been promptly paid, should have been just as promptly returned to the county. To allow interest on that which she had no right to use if paid, would be giving her a profit on the neglect of her own officers.

Further, the item of $23,600.65, attorney general's fees, is stricken off; this sum is not charged because payable to the attorney general; it goes not to him, but into the treasury as a sort of penalty on the debtor for tardiness in payment.

There is no evidence to show that any executive officer of the county of Philadelphia had any notice that a balance of $622,013.11 had been settled against the county on the 31st of December, 1890. So far as appears, the fact was known to only the officers of the commonwealth and the defaulting county treasurer, until about the 20th of May in the following year. The misappropriation of both state and county funds was then discovered to be of such magnitude, and the accounts so confused and intermingled, that the legal advisers of the county may very well have thought best to have a judicial investigation before counseling payment. The default on part of the county is only constructive; under the law, the default of the officer is imputed to the county, as concerns the real obligation; but in fact, the money had been collected and paid once to the officer. Before paying twice, the county instituted an inquiry as to what had become of the money it had paid once. Certainly, this ought not, in view of all the facts, to be treated as a punishable offence, warranting the imposition of a heavy penalty.

As to the settlement, we do not question the conclusiveness of it; we do hold, however, that in equity and good conscience, the amounts we have indicated must be treated as payments on the balance, and the charge for attorney general's fees must be stricken off.

What we have said, in effect disposes of the appeal of the commonwealth; it is dismissed. As to the appeal of the county of Philadelphia, the 18th and 19th assignments of error are sustained for the reasons already given, but not because, as stated in the assignments, the 16th section of the act of June 1, 1889, did not warrant the settlement of December 31, 1890. The judgment of the court below as herein modified is affirmed.