## Siggins *et al. versus* The Commonwealth.

The Act of April 15th 1834, provides a specific remedy for charging county officers with public moneys through the county auditors, and gives sixty days for an appeal from their decisions. *Held*, that after the expiration of the time given for an appeal the decision of the auditor is final.

October 16th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas, of *Forest county:* Of October and November Term 1876, No. 168.

Debt by the Commonwealth, at the relation of the Big Level Road Commissioners, upon the official bond of James P. Siggins, formerly county treasurer, and his sureties, to recover a certain amount alleged to have been collected by said treasurer as a tax on unseated lands. It appeared that by Act of Assembly of May 1st 1861, Pamph. L. 611, a body of commissioners were created, called the Big Level Road Commissioners, with authority to lay out a road in the counties of McKean, Elk and Forest, the seventh section of which act provided as follows :—

[Siggins *v.* Commonwealth.]

" That the said commissioners shall have power to levy and assess a tax upon the unseated assessed property in the townships through which said road shall pass, for the year 1862, and annually thereafter during the continuance of this act, not exceeding ten mills on the dollar in any one year, if they shall deem the same necessary for the purposes herein mentioned, which shall be collected by said commissioners in the same manner as other road taxes in the said townships are now by law collected."

This tax was to be collected by the county treasurer as other taxes upon unseated lands. Siggins was treasurer of Forest county from the 1st of January 1869 to 1st of January 1871, and at the close of each year of his term as treasurer, his accounts, including this Big Level Road fund, were settled by the county auditors. By the auditor's settlement of January 13th 1870, it appeared that he was charged $3717.56, the amount of the Big Level Road tax assessed for 1868 and 1869 in Jenks and Howe, the only townships in Forest county subject to this special levy.

Again, on the 30th of January 1871 the auditors settled his accounts for the second and last year of his term, and after charging him with the said balance due at last settlement, they found that his account with the Big Level Road fund was fully paid and balanced. No appeal was taken from this settlement.

Thus stood the record when this suit was brought, March 6th 1873, by the road commissioners, upon the official bond of the treasurer and his sureties, to recover an alleged balance in his hands not shown by the auditor's settlement.

After this suit was brought, on the 10th of April 1873, the legislature passed an act (Pamph. L. 747) providing:—

" That it shall be lawful for the auditors of Forest county, after ten days' notice to the commissioners of said county, and to said J. P. Siggins, to meet at the commissioners' office, in said county, and re-audit the accounts of James P. Siggins, late treasurer of said county, and having so made the same, like proceedings shall be had as in other cases; and such re-audit so made, as aforesaid, shall have the same effect as in other cases against the county, as against the said James P. Siggins and his sureties."

Another audit accordingly took place on the 23d of October 1873. The auditors decided they could not re-audit the fund, and no appeal was taken from this decision by the road commissioners, who appeared by counsel.

The defendants contended that no liability of Siggins could be shown except by an auditor's report, under the Act of Assembly, or by a verdict and judgment on appeal therefrom, and yet here the auditor's reports negative the idea of liability to plaintiffs, and estop them from maintaining this action.

The court, Wetmore, J., said to the jury: " The plaintiffs are not estopped by the auditor's reports as given in evidence. The

proceedings before the auditors on the re-audit do not disclose any fact to submit to the jury, on the question of an audit of the amounts or claim of plaintiff."

The verdict was for the plaintiffs for $8000, and defendants took this writ, assigning the foregoing charge for error.

*M. W. Tate* and *B. J. Reid*, for plaintiffs in error.—The Act of April 15th 1834, Purd. Dig. 300, has provided a specific and adequate mode of charging county officers with public moneys alleged to be in their hands.   It enacts that the county auditors of each county "shall audit, settle, and adjust the accounts of the commissioners, treasurer, sheriff and coroner of the county, and make report thereof to the Court of Common Pleas of such county, together with a statement of the balance due from or to such commissioners, treasurer, sheriff or coroner."   Full power is given to investigate the facts, and their report, when filed, has the effect of a judgment against the officer.   Sixty days are allowed for an appeal by either party.

This remedy, being specific and statutory, excludes all others, and the report of the auditors, unappealed from, is conclusive upon all parties : Blackmore *v.* County of Allegheny, 1 P. F. Smith 160 ; Glatfelter *v.* Commonwealth, 24 Id. 74 ; Potter County *v.* Oswayo · Township, 11 Wright 163 ; Brown *v.* White Deer Township, 3 Casey 111.

No paper book or appearance by counsel for defendants in error.

Mr. Justice WOODWARD delivered the opinion of the court, January 7th 1878.

It was no part of the purpose of the Act of the 1st of May 1861, to enlarge the liabilities of the treasurers of the counties of McKean, Elk, Forest and Clarion, or to vary the mode prescribed by the Act of the 15th of April 1834, for the settlement of their accounts. The object in view when the Act of 1861 was passed, was the construction of a state road from a point to be fixed in Hamlin township, in the county of McKean, to Tylersburg, in the county of Clarion.   The third section authorized the commissioners named in the first section to receive a portion of the road taxes equal to three and one-half mills per dollar on the property valuation of the townships through which the state road should pass.   A proviso empowered the supervisors of the proper townships in the county of Forest to levy and collect for the benefit of this improvement a tax of three and one-half mills in addition to the whole road tax authorized by then existing law.   Apparently, this was the completed original plan to secure the construction of the projected highway.   The seventh section, out of which this controversy has grown, looks as if some afterthought had prompted its

interpolation.    These are its terms: " The commissioners shall have power to levy and assess a tax upon the unseated property in the townships through which said road shall pass, for the year one thousand eight hundred and sixty-two, and annually thereafter during the continuance of this act, not exceeding ten mills on the dollar in any one year, if they shall deem the same necessary for the purposes herein mentioned, which shall be collected by said commissioners in the same manner as other road taxes in said townships are now by law collected."    This extraordinary enactment appears to have been acted on, and transcripts of the assessments it authorized were returned to the county commissioners, who certified them to the treasurer for collection.

James P. Siggins, one of the defendants below, was treasurer of the county of Forest during the years 1869 and 1870, and collected the taxes levied by the state road commissioners just as he collected the other road taxes assessed on unseated lands.    His accounts for this fund were settled like his other accounts, by the county auditors.    In the first settlement, made on the 13th of January 1870, he was charged with $3717.56, collected for the state road commissioners from the taxes of 1868 and 1869, and in the final settlement for the second year of his official term, on the 30th of January 1871, the auditors ascertained and reported that the moneys he had received for this fund had been fully paid.    No appeal was taken from the report, but after an acquiescence in the adjustment for more than two years, the state road commissioners brought this suit on the 6th day of March, 1873, to recover a balance alleged to have been collected by the treasurer, and left unaccounted for and unpaid.    Pending the suit, the Act of the 10th of April 1873 was passed, authorizing the auditors for the time being to re-audit the accounts of Siggins, as late treasurer, upon ten days notice to him and to the county commissioners.    At the re-audit, which was had on the 23d of October 1873, the claim of the state road commissioners was presented, but its investigation was refused on the ground that the Act had been passed at the instance of the county officers to correct some errors in a former settlement of county funds.    It appears, indeed, from the testimony of D. W. Clark, that the re-audit was had on an appeal from a report on the county account.

The rights of the state road commissioners must rest where the settlement of the 30th of January 1871 left them.    The Act of 1873 placed them by its terms in no new position, and the refusal at the re-audit to open the account was a re-affirmance of the former adjustment.    Well-considered authorities have settled that their sole remedy was an appeal from the report of the auditors.    In Brown v. White Deer Township, 3 Casey 111, a supervisor had presented a claim against the township, part of which had accrued before a former settlement of his accounts, and the whole of which

[Siggins *v.* Commonwealth.]

the auditors declined to allow.   In entering the judgment of this court in the suit he afterwards brought to collect his claim, KNOX, J., said : " From the refusal of the auditors to allow this claim when presented in March 1850, the supervisor should have appealed within the time allowed by law, if he desired to make good his demand for the money in controversy." The provision of the tenth section of the Act of 1861, that the taxes should be collected " by the said commissioners in the same manner as other road taxes in the said townships are now by law collected," meant simply that they should perform the duties of supervisors in furnishing transcripts of their assessments, and in receiving the money which the county treasurer should in the usual and legal way to collect.   It was held in Potter County *v.* Oswayo Township, 11 Wright 162, that where township taxes assessed upon unseated lands, and collected by the county treasurer, were not paid over by him, the county was responsible to the township for the default.   The unreported case of The County of Lycoming *v.* Huling, was referred to in the opinion of Judge White in Potter County *v.* Oswayo Township, which this court adopted.   J. H. Huling had been treasurer of the county, and in the settlement of his accounts, a balance in favor of the county had been found due.   He paid a portion of it to his successor, and a suit was brought on his official bond to recover what remained unpaid.   His defence was that this was made up of road taxes assessed and paid on unseated lands.   The Court of Common Pleas held this to be a good defence.   In the opinion of this court, reversing the judgment, it was held that while the money received by the treasurer for road taxes remained in the treasury, it was to all intents and purposes a county fund, differing from other county funds only in this, that it must be applied to a special object.   The same rule was applied in Glatfelter *v.* Commonwealth, 24 P. F. Smith 74, where moneys belonging to the military fund created by the Act of the 17th of April 1849, and various supplementary statutes, had passed into the hands of the treasurer of the county of York.   After reciting the provisions of the Act of the 21st of April 1858, the present chief justice added: " Thus, throughout the act, the county treasurer is made the custodian of the military fund, as he is of the other funds of the state and county, while the law is silent as to the settlement of his account.   There being no repealing clause, and no substitute, his account is necessarily to be audited and settled under former laws." A settlement by the county auditors was declared, therefore, to be conclusive on the Commonwealth.   Blackmore *v.* The County of Allegheny, 1 P. F. Smith 160, and the array of precedents there collected, abundantly prove that the decision of the auditors on the accounts of the treasurer is controlling, and cannot be inquired into either by the same tribunal at another time, or by a court of law, except upon appeal.   When the accounts of Siggins, as trea-

surer of the county of Forest, were adjusted in January 1871, by a report from which there was no appeal, the settlement was final and binding on all parties and for all time.

Judgment reversed.