## Commonwealth to use v. Hershey, Appellant.

*Public officers—County treasurer—Tax—Principal and surety.*

The sureties on the bond of a county treasurer given to the state under the Act of April 15, 1834, P. L. 542, are liable for his default in not paying to the state treasurer the four-mill tax assessed on the owners of mortgages, judgments, etc., under the Act of June 8, 1891, P. L. 229, and if the county pays the state the amount of the treasurer's default, it may recover from his sureties on the state bond, but the amount of recovery is limited to the difference between the whole tax charged and paid to the state, and the amount of the tax which the state was required immediately to return to the county.

Argued May 20, 1901. Appeal, No. 278, Jan T., 1900, by defendants, from order of C. P. Lancaster Co., Feb. T., 1900, No. 84, making absolute rule for judgment for want of a sufficient affidavit of defense. Before McCOLLUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ. Order modified.

Assumpsit on a bond of suretyship.

From the opinion of LANDIS, J., on the rule for judgment for want of a sufficient affidavit of defense the following facts appear:

Emanuel H. Hershey, one of the above-named defendants, was duly elected treasurer of the county of Lancaster on November 3, 1896, and took charge of that office on the first Monday in January, 1897. Prior to the latter date, he gave two bonds—one to the county of Lancaster in the sum of $100,000, conditioned that he should "faithfully perform all the duties of the said office, should keep safe and render just and true account of all the moneys which should come to his hands on behalf of the said county, and should deliver to his successor all books, papers, documents and other things held by him in right of said office, and should pay to his successor in office any balance of money belonging to the said county;" the other of said bonds was to the state, in the sum of $60,000, conditioned "that if the above bounden Emanuel H. Hershey shall and do keep safe and account, as directed by law, for all moneys received by him for the use of the said commonwealth, and shall faithfully discharge all duties enjoined on him by law in behalf of the said commonwealth of Pennsylvania, then this obligation to be void." The sureties on this latter bond, which is the bond in suit, were C. H. Hershey, Amos Hershey, Abram B. Huber, John R. Bricker and J. R. Bitner. As Mr. Bitner is dead, he has not been made a party to this suit; but, in case there is a liability upon the bond, the extent of the liability of his estate is the subject of another action.

On the first Monday in January, 1900, at the expiration of his term of office, there should have been in the treasurer's possession the sum of $126,661.44, and that sum should have been paid over to his successor in office. It was not so paid over. When the time for settlement arrived, Hershey had disappeared, and there remained in the treasury, which came into the hands of Jacob Stone, his successor, the sum of $61,623.50, thus leaving a deficit of $65,034.94.

During the year 1899 he collected, in accordance with the Act of June 8, 1891, P. L. 229, section 1, which is an amendment of section 1 of the Act of June 1, 1889, P. L. 420, the four-mill tax on money at interest, etc., amounting to $83,930.83.

Under the provisions of the act of 1891, when this money is paid into the state treasury, three fourths of it, less the treasurer's commission, is refunded to the counties. No part of it, however, for this year, was paid into the state treasury, and it was supposed to be, and should have been, in the hands of the county treasurer at the expiration of his term of office.

The moneys received for county and state purposes were not deposited in separate accounts, but were mingled and without earmarks. On February 2, 1900, the county, through its new treasurer, paid to the state treasurer the $83,930.83 above mentioned; and received back on the same day $62,318.65. Suit is therefore brought to recover, for the use of the county, upon the state bond, the sum embezzled by Hershey of these so-called state moneys.

The court made the rule absolute, and entered judgment against defendants for $44,072.94. Defendants appealed.

*Error assigned* was the order of the court.

W. U. Hensel, with him O. P. Bricker, M. G. Schaeffer and Coyle & Keller, for appellant.—The defendants and appellants, sureties on the " state " bond, cannot be held liable for the default of the county treasurer in any obligation or duty as the agent of the county: State v. Young, 23 Minn. 551; Hawkins Co. v. Starnes, 5 Lea (Tenn.), 545; Broad v. City of Paris, 66 Tex. 119; White v. East Saginaw, 43 Mich. 567; Com. v. Toms, 45 Pa. 408.

As Hershey was agent for the county until the tax was paid by him to the state treasurer, his default was a breach of the bond to the county and his bondsmen on the county bond are liable: Com. v. Phila. County, 157 Pa. 531; Com. v. Durkin, 109 Pa. 138; Hughes v. Com., 48 Pa. 66; Elder v. Com., 55 Pa. 485.

Conceding for the argument's sake, that the county is entitled to subrogation, surely it cannot recover more than it has lost: Erb's Appeal, 2 P. & W. 296; Lloyd v. Galbraith, 32 Pa. 103; Wallace's Estate, 59 Pa. 401; Miller v. Jacobs, 3 Watts, 477; McGinnis's Appeal, 16 Pa. 445; Aldrich v. Cooper, 8 Vesey, 391; Ramsey's Appeal, 2 Watts, 232; Kyner v. Kyner, 6 Watts, 224; 3 Pomeroy's Equity Jurisprudence, sec. 1419, note 1; Ziegler v. Long, 2 Watts, 206.

If we are right, that the sureties on the county bond could have been liable for only \$21,612.18 in the event that all of the money which should have been in the county treasury had been lost, then it is only a matter of mathematical calculation what the judgment in this case should have been, if any were entered. The plaintiff's statement admits that, at the time of the defalcation, there was left in the county treasury \$61,623.50. If the treasurer then owed the state \$20,772.88, he owed the county the difference between that amount and \$126,661.44, namely, \$105,888.56. It being admitted that the money which he had in hand could not be traced to any particular source, upon the principle conceded by the court and by all parties to the contention, it must be apportioned between the county and the state in the proportion of \$105,888.56 and \$20,772.88; so that the state bondsmen are entitled to a credit of $\frac{2077288}{10588856}$, which produces a quotient of (.164) \$10,106.45. This amount of money must, therefore, in equity and good conscience, be credited to the bondsmen on the state bond, and leaves their liability at \$10,666.43. Thus the county treasurer was in default, on account of moneys due to the state, to the amount of \$10,666.43 only, and to this extent alone can these defendants, as sureties on his bond to the state, be held liable, if they can be held to be liable for any amount.

*A. B. Hassler*, with him *N. Franklin Hall*, county solicitor, for appellee.—We contend there can be no question, that the bond upon which this suit is brought, viz: the state bond, is liable for any misappropriation by a county treasurer of this tax: Hughes v. Com., 48 Pa. 66; Elder v. Com., 55 Pa. 485; Com. v. Toms, 45 Pa. 408; White v. East Saginaw, 43 Mich. 567; State v. Bateman, 102 N. C. 52; Com. v. Durkin, 109 Pa. 138; Stoudt v. Hine, 45 Pa. 30; Schuylkill County v. Com., 36 Pa. 524.

The county having paid this personal property tax, it is subrogated to the rights of the state on the state bond: Elder v. Com., 55 Pa. 485.

The appellants in this case have no right to regard that as done which ought to be done. They are sureties on a bond, conditioned for the faithful performance of the duties of ex-county Treasurer Hershey, " on behalf of the commonwealth, and for

the payment according to law of all moneys received by him for the use of the commonwealth." They cannot regard that he has performed those duties, until he actually has performed them, in order to shift on others the responsibility they assumed when they signed the bond.

OPINION BY MR. JUSTICE FELL, July 17, 1901:

We agree with the learned judge of the common pleas that the sureties on the bond of the county treasurer given to the state under the act of 1834 are liable for his default in not paying to the state treasurer the four-mill tax assessed on the owners of mortgages, judgments, etc., under the act of 1891; and that the county having paid the state the amount of the treasurer's default, may recover from his sureties on the state bond. Nothing can profitably be added to the full and able discussion of the subject found in the opinion filed.

We cannot however accept the conclusion reached as to the amount for which a recovery may be had in this action. The tax collected by the county treasurer for the state was $83,930.83. This sum was paid to the state by the county after the treasurer's defalcation and before this action was brought. The county immediately received back from the state $62,318.65, being three fourths of the tax, less the treasurer's commission, returned to the county under the provisions of the act of 1891, making the net payment by the county only $21,612.18. This action is founded on the right of the county to be subrogated to the use of the remedies which the state had to secure the payment to it of the tax collected by the treasurer. The right of the county is, of course, no higher than that of the state and it cannot in any event recover more than it lost by reason of the failure of the treasurer to perform his duty to the state. In an action by the state against the county, under the facts as they appear, the prinicples stated in the opinion in Commonwealth v. Philadelphia, 157 Pa. 531, would limit the recovery to the difference between the whole tax charged and the amount of the tax which the state was required to return to the county. If the treasurer had complied with the law and paid the tax and received back three fourths thereof, the county would have been $21,612.18 better off, and this was all it was required to pay because of his default in this particular. To charge the defend-

ants with the whole tax, $83,930.83, is to charge them with $62,318.65, which the treasurer would have received from the state as county treasurer, and for the safe keeping of which they were not responsible. In other words if the treasurer had complied with the law as regards the state, he would have paid out $21,612.18 more than he would have received back as county treasurer; his failure in this regard cost the county $21,612.18. We are not adjusting the equities between the sureties on the county bond and those on the state bond, but dealing only with the strict rights of the parties to this action. In this view of the case the proportion of the whole loss because of the treasurer's defalcation which should be borne by his sureties on the state bond is $10,666.43, and the judgment entered is reduced to this amount with interest from February 2, 1900. With this modification, the order of the court is affirmed.