# Lancaster County *v.* Hershey, Appellant.

*Public officers—County officers—Principal and surety—Settlement by county auditors—Action—Premature action.*

Where a county treasurer has kept accounts, and handed his books of account over to his successor, but has failed to pay to his successor a balance shown by his books to be due to the county, a common-law action may be maintained by the county against the sureties on the treasurer's bond, although the county auditors may have not as yet settled and adjusted the treasurer's account.

MESTREZAT and POTTER, JJ., dissent,

Reargued Feb. 2, 1903. Appeal, No. 153, Jan. T., 1902, by defendants, from order of C. P. Lancaster County, Feb. T., 1900, No. 85, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Lancaster County v. Emanuel H. Hershey, C. H. Hershey, Amos Hershey, Jacob

L. Brubaker and Joel S. Eaby. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Rule for judgment for want of a sufficient affidavit of defense.

LANDIS, J., filed an opinion which was in part as follows:

Emanuel H. Hershey, having been elected treasurer of Lancaster county, before entering upon the duties of his office, gave two bonds, one to the county of Lancaster, in the sum of $100,000, conditioned to "faithfully perform all the duties of the said office," to "keep safe and render just and true accounts of all moneys that shall come into his hands on behalf of the said county," and to "deliver to his successor all books, papers, documents and all other things held by him in right of said office," and to "pay to his successor in office any balance of money belonging to the said county;" and the other to the commonwealth of Pennsylvania, in the sum of $60,000, conditioned to "keep safe and account, as directed by law, for all moneys received by him for the use of the said commonwealth," and to "faithfully discharge all duties enjoined on him by law in behalf of the said commonwealth of Pennsylvania." His term of office expired on the first Monday in January, 1900, and his successor, Jacob Stoner, then assumed the duties of the office. He proved to be a defaulter, the amount of his deficiency being $65,037.94. From this the plaintiff, in its amended statement, admits there should be deducted certain commissions and allowances. It is not assumed that any moneys came into his hands which were not covered by one of these bonds, and the present proceeding is to ascertain the liability on the county bond.

In Commonwealth to the use of the County of Lancaster v. Hershey et al., 200 Pa. 306, the liability on the state bond was fixed at $10,666.43, and judgment was entered for that amount. That case conclusively settles the law as to the liability of the state bondsmen, and it would be futile for us to again enter into a discussion of that question. [It would, therefore, seem to follow, as a corollary, that, if the whole default was $65,037.94, and the state funds included in that amount and which the state bondsmen were compelled to pay

were $10,666.43, the difference, less the deductions above referred to would be the amount of county moneys not paid over, and, therefore, that would be the liability for which the sureties on the county bond are now responsible.] [1] It must, of course, be conceded that the judgment in the case against the state bondsmen cannot absolutely determine the rights of the sureties on the county bond; but the principles decided in that case must necessarily be effective against these defendants, if the facts as here presented are similar to those coming before the court in that proceeding. If, therefore, no new legal difficulties would intervene, we would be bound to render a judgment based upon the conclusion there laid by the Supreme Court, and it only then remains for us to investigate what additional objections have been here interposed to prevent the entry of such a judgment which were not presented at the hearing of the other case. . . .

It has, however, been strenuously urged that no suit could be commenced upon the bond until the county auditors had first settled the treasurer's accounts. We have carefully examined the numerous cases, which, through the industry of the learned counsel for the defendants, have been cited upon this point; but among them we fail to find a single one which supports the proposition in its entirety. It is true that it has been held that a settlement, when once made by the auditors, is conclusive between the officer and the county, unless appealed from in accordance with the statute, and, where the auditors have thus adjusted the account, the officer could neither maintain an action against the county for items not included in the settlement nor the county against the officer: Siggins v. Commonwealth, 85 Pa. 278; Blackmore v. County of Allegheny, 51 Pa. 160 ; County of Schuylkill v. Boyer, 126 Pa. 226 ; Westmoreland County v. Fisher, 172 Pa. 317; Northampton County v. Herman, 119 Pa. 373. These, however, are not the real questions, as we understand them, which are now presented for decision.

[Suit here is really brought against the sureties alone, there being no personal service upon the principal, who, prior to the issuing of the writ, had left the jurisdiction, although technically he has been served by leaving a copy of the writ at his residence.] [8]    [It is asserted, and not denied, that subse-

quently to the bringing of the suit the county auditors audited his accounts and found the balance due as is claimed by the plaintiff.] [9]   At best, then, if no judgment could have been recovered until after the holding of such an audit, what was there in either the acts of assembly, or the decisions of the court, to prevent the bringing of the suit, and then awaiting such an adjudication before entry of judgment?   Some inconvenience and great danger of loss might attend any other construction of the law.   If, as in this case, one of the sureties was dead, leaving real estate, and the period of two years was approaching since his decease, after which time his debts would cease to be a lien upon the same, the neglect or inability of the auditors to settle finally the account before that period had elapsed would bring about the loss of the security, and perhaps wholly take away the protection of the public, were there not others upon the bond of equal responsibility against whom it could be enforced.   If, too, as has been forcibly said, an appeal was taken from the settlement, years might elapse before a final disposition of it, and, in the meantime, all the county's money, whether in dispute or not, could be retained by the outgoing officer, to the great prejudice and injury of the county, and perhaps to an impairment of its credit.   [It is true that in Branch Township v. Youndth, 23 Pa. 182, it was held that, where one of the supervisors of a township was appointed to collect the road taxes and gave bond with sureties, no action would lie against the sureties without a previous settlement of the account of the collector by the township auditors.   This proceeding was, however, under a special act of assembly, and the same principle does not, as we think, apply to a case such as that now under consideration.   But, even if it does, we strongly doubt whether it is well considered.] [6]

The acts of assembly which direct that official bonds of public officers shall be sued for in the name of the commonwealth would seem to refer to those bonds such as are given by the prothonotary, register, recorder and the like, in which the individual citizen has an interest for which he can maintain an action upon the bond for his use.   Even this direction is not, however, compulsory, for in Clarke v. Potter County, 1 Pa. 159, GIBSON, C. J., says : "Nor is it an available objection that the bond is not payable to the commonwealth instead of

the county.  Though the 6th section of the act of 1836 directs how an official bond to the commonwealth shall be sued, it prescribes not what bonds shall be given to the commonwealth as a trustee; and the 33d and 34th sections of the act of 1834, which require the treasurer to give one bond for his duties to the county and another for his duties to the commonwealth, are silent as to the person of the obligee.  But it seems to be most natural and proper to give them respectively to the agents of the interests to be secured by them ; in other words, to the county or the commonwealth, as the case may require."  [In like manner the Act of June 14, 1836, P. L. 637, would seem to have no application to cases like this. That act provides for the assignment of specific breaches of the bond, and the purposes intended to be subserved are those which refer to such public officers, executors and administrators and the like, whose bonds are given for the benefit of individual interests, and may thus be used.] [4]

The bond of the county treasurer is, however, somewhat different from other bonds.  It is for the protection of the county alone, and is, therefore, given by virtue of the 33d section of the Act of April 15, 1834, P. L. 537, to the satisfaction of the commissioners, conditioned " for the faithful performance of the duties of his office, for a just account of all moneys that may come into his hands on behalf of the county, for the delivery to his successor in office of all books, papers, documents and other things held in right of his office, and for the payment to (by) him of any balance of money belonging to the county remaining in his hands."  No individual can reap any benefit from it, nor can a default entail any individual loss, except that which may fall upon the sureties upon being compelled to pay.  It is true that by the 48th section of the same act it is provided that " the auditors of each county, any two of whom, when duly convened, shall be a quorum, shall audit, settle and adjust the accounts of the commissioners, treasurer and sheriff and coroner of the county, and make report thereof to the court of common pleas of such county, together with a statement of the balance due from or to such commissioners, treasurer, sheriff or coroner ; " and section 55 says : " The report of the auditors shall be filed among the records of the court of common pleas of the respective county,

and from the time of being so filed shall have the effect of a judgment against the real estate of the officer, who shall thereby appear to be indebted either to the commonwealth or to the county ; " and in the next section," An appeal may be made from such report to the court of common pleas of the same county, either by the commonwealth, the county or the officer." But the sureties in the bond have no standing before the auditors, and the adjudication is simply between the officer and the county or the commonwealth. No judgment can be entered, by reason of the settlement, against the sureties, nor can they appeal from the finding. Of course, the conclusion arrived at by the auditors may be binding upon the sureties in a subsequent suit upon the bond, but, outside of the mere ascertainment of the balance in the hands of the officer, their rights are not prejudiced, and any other defenses which they may have are open to them in the subsequent action. [We, therefore, hold that the suit was not prematurely brought, and the fact that no prior auditor's report was filed before its commencement does not make this proceeding void.] [5]

It is also alleged that the defendants are not liable for the loss occasioned by the default, because it occurred through the laches and negligence of the county commissioners. This objection may be very summarily disposed of. In Commonwealth v. Wolbert, 6 Binn. 292, it was held, even in case of a voluntary bond, there being no act of assembly which compelled one to be given, that " an omission on the part of the accounting officers of the commonwealth for a year and upwards to compel the prothonotary of the common pleas to settle his account of fees does not discharge the sureties on the official bond of the prothonotary, although the officers are authorized to compel an account at the end of each year and to enforce payment by execution." And in Commonwealth v. Porter, 21 Pa. 385, it was said : "It is no answer to this that the auditor general for a long time neglected to decide upon the account, for it is settled by numerous decisions, beginning with our own case of Commonwealth v. Wolbert, 6 Binn. 292, that the state is not chargeable with the negligence of its officers in such cases, even as against sureties." The court then proceeds to say: " On the principle of common justice, how can it be otherwise ? There is no duty more plainly implied

and written than that of a county treasurer to pay, and how can he excuse his neglect by pleading that of his superior officer to call on him? His is the first fault, and it is not forgiven because of a similar neglect of another. The auditor general did not settle the account, and what of that? It was no less the duty of the county treasurer to pay, and if he kept his accounts as he ought to have done he knew exactly what to pay." See also Commonwealth v. Brice, 22 Pa. 211, Pittsburg, Fort Wayne & Chicago Railway Co. v. Shaeffer, 59 Pa. 350, Throop on Public Officers, sec. 283, p. 289, and Supervisors v. Otis, 62 N. Y. 88. The doctrine that the sureties of a public officer are not discharged by the laches or omissions of another officer, or board of officers, to take proceedings against the principal or to settle his accounts, as required by law, although such laches have been gross and unreasonable, and the principal has meanwhile become insolvent, has been established in numerous cases : Throop on Public Officers, sec. 283, p. 290.

The mere denials contained in the affidavit are of no effect, where it plainly appears on the face of the affidavit that the general words are a mere evasion of the real facts. Assertions on the part of a defendant that he has paid a debt, without setting forth when and the manner in which he has paid it, are of no account, and in a similar way an allegation that he does not owe the claim will not be considered. The general allegations contained in the affidavit of defense are based upon the assumption that some of the moneys for which this suit is brought were state moneys and not county moneys. A calculation based upon the figures presented will show this to be the case. That question has, however, already been settled. They allege that the sum of $42,730.61 was all of the funds of the county of Lancaster in the hands of the treasurer on January 1, 1900. The difference between that amount and $126,661.44, which was claimed to be the total of the indebtedness before any payments were made, is $83,930.83, the exact amount of the state tax. There, then, having been paid by the treasurer to his successor by checks and cash $61,623.50, the defendants hold that the amount due upon this bond was settled, because so much should be appropriated for this purpose from the treasurer's payment. They ignore, however, their admissions that no separate accounts were kept of the state and the

county moneys in the bank, and that the same were deposited under one account, and they not even allege that the treasurer himself made such an appropriation for their benefit.

[It is now too late to insist that the money collected from the state tax was all state money.] [11]   The Supreme Court in Commonwealth v. Hershey, supra, and Commonwealth v. Philadelphia County, 157 Pa. 531, have decided that they will consider as paid that which ought to have been paid.   Three fourths of the state tax being returnable to the county upon the payment of the whole state tax to the state, that court has also determined that this amount was to be considered as county money, although the interchange had not been really made, and, therefore, the actual amount of state money in the hands of the treasurer at the expiration of his term of office was not $83,930.83, but only $21,612.18, and the cash payment of the amount deposited being apportioned between the state and the county money, the state bond was answerable for its proportionate share, after deducting the credit ascertained upon this basis.

It must be recollected that there is no distinction between the liability of a surety and that of a principal in the bond, and that the same act of neglect which will charge the principal will also charge the surety.   Where the statute expressly requires an officer to pay to his successor all moneys in his hands his bond is also conditioned to the same effect.   An active duty is thereby imposed upon the officer, and a failure to perform it constitutes a breach of the conditions of the bond : Throop on Public Officers, sec. 295, p. 300.   Whenever the condition of the bond is broken an action lies thereon, without notice to, or demand upon, the principal, and, therefore, as in this case, [there being an admitted breach of the bond by the facts as here presented, we are of opinion that the defendants are liable and that judgment should be entered in favor of the plaintiff against them for the sum of $61,104.62.

Judgment for plaintiff.] [12]

*Errors assigned* were (1, 4, 5, 8, 9, 11, 12) portions of opinion as above.

*John G. Johnson,* with him *M. G. Shaeffer* and *Coyle & Keller,* for appellant.—There can be no recovery in a suit against

the sureties of the bond of a defaulting county treasurer, if there has been no settlement of the accounts by the county auditors: Blackmore v. Allegheny County, 51 Pa. 160; Northumberland County v. Bloom, 3 W. & S. 542; Schuylkill County v. Boyer, 125 Pa. 226; Westmoreland County v. Fisher, 172 Pa. 317; Com. v. Laub, 3 W. & S. 435; Glatfelter v. Com., 74 Pa. 74; Com. v. Griffith, 1 Lanc. Law Rev. 201; Com. v. Griffith, 2 Lanc. Law. Rev. 17; Northampton County v. Yohe, 24 Pa. 305; Rowand v. Allegheny Co., 111 Pa. 309; In re Report of County Auditors, 1 Woodward, 270.

The agreement of the parties cannot give the court of common pleas jurisdiction. The only tribunal having original jurisdiction is the board of county auditors: Harris v. Luzerne County, 11 W. N. C. 462; Harris v. Luzerne County, 2 Kulp, 105.

*A. B. Hassler*, with him *N. F. Hall*, for appellee.—A report of county auditors, auditing, settling and adjusting the accounts of a county treasurer, is not necessary to enable a county to recover from the sureties on such a bond as a county treasurer is required to give, by section 33 of the act of April 15, 1834, any loss that it has sustained by reason of any breach of the condition of the bond, where such breach is shown by the county treasurer's accounts: Supervisors v. Clark, 92 N. Y. 391; McKim v. Blake, 139 Mass. 593 (2 N. E. Repr. 157); United States v. Boyd, 5 Howard, 29; Bissell v. Saxton, 66 N. Y. 55; Robertson v. Trigg, 73 Va. 76; Broad v. City of Paris, 66 Texas, 119 (18 S. W. Repr. 342); McLean v. State, 8 Heisk. 22; Ohning v. Evansville, 66 Ind. 59; Van Sickel v. Buffalo Co., 13 Neb. 103 (13 N. W. Repr. 19); Town of Union v. Bernes, 44 N. J. L. 269; Cawley v. The People, 95 Ill. 249; Chicago v. Gage, 95 Ill. 593; Longan v. Taylor, 130 Ill. 412 (22 N. E. Repr. 745); Sooy v. The State, 41 N. J. L. 394; Boone Co. v. Jones, 54 Ia. 699 (2 N. W. Repr. 987).

Even though the court should be of the opinion that there could be no recovery from the sureties on such a bond, until the accounts of the county treasurer had been audited, it would not be necessary to delay bringing suit, where his accounts showed him to be a defaulter prior to bringing the suit. The auditor's report would not be a cause of action, but only con-

clusive evidence of a state of facts that existed at the time the county treasurer was in default, and thereby broke the condition of the bond. When the condition of the bond was broken, a cause of action arose, suit could be commenced at once, and the court with its discretionary power could, if necessary, delay the trial until the auditors had reported, so as to have the evidence of the breach of the bond in that form: Boehmer v. Schuylkill County, 46 Pa. 452; Siggins v. Com., 85 Pa. 278; Com. v. Piroth, 17 Pa. Superior Ct. 278; Com. v. Steacy, 100 Pa. 613.

OPINION BY MR. JUSTICE DEAN, April 20, 1903:

Emanuel H. Hershey was duly elected county treasurer of Lancaster county. To qualify he gave two bonds, one to the commonwealth and one to the county of Lancaster, the latter in sum of $100,000; among the conditions of this bond were these, that he would keep full accounts and that on expiration of his term, he would deliver to his successor all books, papers, documents and all other things held by him in right of said office and pay to his successor any balance of money belonging to said county. The other bond was to the commonwealth in the sum of $60,000, conditioned to keep safe and account as directed by law for all moneys received by him for use of the commonwealth. The treasurer's term of office expired the first Monday of January, 1900, when his successor was duly qualified and assumed the duties of the office. Hershey turned out to be a defaulter, altogether, to the amount of over $65,000. The amount due the commonwealth was ascertained to be $10,666.43. See Commonwealth v. Hershey, 200 Pa. 306. For this amount the commonwealth obtained judgment and the sureties paid it. This amount with some commissions added, deducted from the whole amount of the default, left the balance due the county $61,104.62, the amount for which the court below entered judgment against the treasurer and his sureties on the county bond in this case. The judgment was entered for want of a sufficient affidavit of defense. The two sureties, C. H. Hershey and Amos Hershey, bring this appeal.

There are thirteen assignments of error, most of them to the correctness of the court's method of ascertaining the balance due the county, and the soundness of its conclusions of law based

on the admissions expressed or implied in the affidavit of defense, also on the proper effect to be given the judicial determination in Commonwealth v. Hershey et al., supra. A careful scrutiny of the very clear opinion of the court below and an examination of the authorities cited in it leads us to the firm conclusion, that all of the assignments of error except the fifth are without real merit and should be overruled. The fifth raises some doubt and demands special notice; it is as follows: "The court erred in holding that the suit was not prematurely brought, and the fact that no prior auditor's report was filed before its commencement does not make this proceeding void." Although the county auditors did settle and adjust the accounts of the county treasurer before the judgment was entered, they had not yet acted in the matter at the time the suit was brought, therefore, it is argued, the suit was premature and must fail.

Section 48 of the act of 1834 says:

" The auditors of each county, and two of them when duly convened shall be a quorum, shall audit, settle and adjust the accounts of the commissioners, treasurer, sheriff and coroner, of the county, and make report thereof to the court of common pleas of such county together with a statement of the balance due from or to such commissioners, treasurer, sheriff or coroner."

This section was not for the protection of the officer or his sureties; its purpose was the protection of the public; the accounts of the officer must not be left solely to his determination; they must undergo the scrutiny of a board of officers elected by the people entirely independent of him, and having no interest in common with him. This is apparent from the proviso to the act of February 18, 1871. A vicious custom had grown up in some of the counties, of electing as one of the auditors the county treasurer; that proviso expressly prohibits it. The finding of the auditors, may, or may not change the accounts of the officer so as to affect his or his sureties' liability; their finding might, if not appealed from, absolutely determine a breach of the bond, when by the officer's own account no such breach was shown. This suit was brought February 9, 1900; there was no auditor's report until August 21 of that year and if the question, as to whether there is a breach of the condition

of the bond, is determinable solely by the adjudication of the auditors, of course the suit was premature ; but as we have intimated, that board does not alone determine that fact; we must go back of it and take notice of the law defining the officer's duties and the obligation of his sureties.   Section 33 of the act of April 15, 1834 says :

"Each county treasurer shall give bond with sureties . . . . conditioned for the faithful performance of the duties of his office ; for a just account of all moneys that may come into his hands on behalf of the county : for the delivery to his successor in office of all books, papers and documents and other things, held in right of his office and for the payment to him of any balance of money, belonging to the county remaining in his hands."

It will be noticed that in addition to the general duty of faithful performance, he is to do three specific things : 1. Keep a just account of all moneys that come into his hands.   2. Deliver to his successor all books, papers and documents held in right of his office.   3. Pay over to his successor any balance of county money remaining in his hands.   And such were the conditions of the bond, which conditions his sureties undertook he would perform.   It is not material that the written obligation in the bond does not exactly follow the words of the statute ; it was a statutory bond given under and by the provisions of the statute and the liability assumed by the sureties was the one fixed by the statute.   No breach of the first and second specific duties is alleged ; the officer did keep accounts, he did deliver to his successor the books and papers held in right of his office ; but he failed to perform the third specific duty, pay over to his successor the balance of the county money in his hands.   How do we know this ?   We answer, from the public account books. which the law enjoined upon him as a duty to keep and which he handed over to his successor; they were not his individual books, they belonged to the public and were kept for a public purpose ; they showed a large balance in his hands belonging to the county ; he did not pay this to his successor.   Why was not this a breach of duty for which the sureties were at once answerable ?   It is answered that the auditors had not yet settled and adjusted his accounts.   But this did not postpone the performance of a plain statutory duty on the part of the of-

ficer. The accounts which the law directed him to keep, and which he did keep and handed to his successor showed a large balance in his hands. This public account kept by an officer was just as much an account authorized by law as the report of the county auditors. True, that report might increase the balance or on evidence of some mistake shown by the officer lessen it, but prima facie his account showed the balance of money in his hands belonging to the county. The county so assumed and brought suit. Afterwards, the county auditors made adjustment but made no change in the balance; even if they had changed it, that fact would not have affected the prima facie proof of the breach growing out of the distinct unequivocal admission of the officer in the lawful account kept by him. It is conceivable that the county auditors might not have met for a year or more. Is the outgoing officer to retain a large balance of the public money to the possible great prejudice of the public during that interval? That is, would the neglect or inability of one set of officers to perform their duty suspend the obligation to perform a plain duty on the part of another? The bond of the sureties, by the express terms of the act, was that the officer should pay over to his successor immediately, the balance on hand, not such sum as in the indefinite future the county auditors might find to be in his hands, when his term ended. This, from the plain account kept by himself he failed to do, and the suit might at once be brought.

We do not undertake to decide in this case, what would have been the proper course of the county had the treasurer failed to perform any one of the three special provisions of the bond, that is, had not kept accounts, had not handed them to his successor and had not paid over the balance; such default raises a different question and one not before us. The authorities cited by appellant are not in point; they are all under other statutes with other provisions as to other officers with other duties; we decide the case on our statute prescribing specifically the duties of the officer, the conditions in his bond, and the undisputed fact of his default from the official account kept by him.

The opinion of the learned court below fully demonstrates the soundness of the judgment and it is affirmed.

MESTREZAT, J., dissenting:

I would reverse the judgment entered in the court below for two reasons: 1. The sureties on an official bond, given by a county treasurer to the county, are not liable thereon for his failure to account for moneys collected by him for the state and payable to the state treasurer.   2. If there is a liability on the bond, no action will lie against the treasurer or his surety until the auditors of the county have setted the accounts of the treasurer and ascertained the amount due from him to the county.   If, however, neither of these positions be tenable, the judgment should be reduced by at least $30,000, as it is clearly excessive to that amount as shown by the appellee's own figures.

1. This action was brought February 9, 1900, by the county of Lancaster against the treasurer of the county and his sureties on the bond given by the officer to the county.   The record discloses the fact that service of the writ was made on the treasurer and the administrator of one of the other sureties and was accepted by counsel of the other surety.   All parties, therefore, were in court subject to its orders and judgment. The plaintiff filed a statement in which it is averred that the treasurer failed to pay to his successor in office the sum of $65,037.94.   But of that sum $10,666.43 had since been collected in a suit on the state bond leaving $54,371.51 as a claim in this suit.   The sureties filed an affidavit of defense denying the right of the plaintiff to recover any sum in the action because, among other reasons, the amount, if any, due from the treasurer had not been determined by the county auditors at the time of bringing the action; and the said amount is the tax on personal property collected for, and due, the commonwealth. This is a rule for judgment for want of a sufficient affidavit of defense and these averments must, therefore, be taken to be true.

The Act of April 15, 1834, Purd. Dig. 462, pl. 8, requires the county treasurer to give two bonds : one, "conditioned for the faithful performance of the duties of his office, for a just account of all moneys that may come into his hands on behalf of the county, . . . . and for the payment to him (his successor), of any balance of money belonging to the county remaining in his hands;" the other, "conditioned for the faithful

discharge of all duties enjoined upon him by law in behalf of the commonwealth, and for the payment, according to law, of all moneys received by him for the use of the commonwealth."

The Act of April 29, 1844, sec. 40, Purd. Dig. 1967, pl. 20, provides that " it shall be the duty of the commissioners of the several counties to cause to be collected the tax as aforesaid adjusted and assessed; and the respective county treasurers shall pay over the same, as fast as collected, to the state treasurer; and if the quota of any county be not paid before the second Tuesday in January in each year, to the state treasurer, then and in such case, the amount remaining unpaid, after deducting such commissions as are or shall be allowed by law for the collection of the same, shall be charged against said county on the books of the state treasurer."

In Commonwealth v. Philadelphia County, 157 Pa. 531, it is said that the act of April 29, 1844 is substantially the same in its provisions as the act of 1889. The cases of this court construing the prior legislation on this subject may, therefore, be regarded as controlling the question under consideration here.

It will be observed that the county treasurer has duties to perform not only for the county, but also for the commonwealth. He must collect the tax levied by the county and certain taxes levied by, and payable to, the commonwealth. For this reason, he is required by law to give a bond to each; the one, to the county that he will account for and pay over all moneys that may come into his hands belonging to the county; the other, to the commonwealth that he will make payment, according to law, of all moneys received by him for the use of the commonwealth. It is, therefore, apparent that the two bonds are given for different purposes, to secure the payment of different funds, and that the sureties on the one are not liable for a default and failure of their principal to account for moneys secured by the other. If this be not true, and the sureties on the county bond are liable for moneys collected by the treasurer for the state, why take two bonds? The additional, or state, bond is taken for some purpose, and that purpose is found and disclosed in the bond itself, to wit: to secure payment of moneys collected for the commonwealth.

The foregoing view of the liability imposed by the respective

bonds is sustained by the adjudicated cases. In Hughes v. Commonwealth, 48 Pa. 66, an action on a state bond by the commonwealth against a surety on the bond to recover for "state taxes on real and personal estate," it was held that "a surety on the state bond of a county treasurer is liable for taxes on real and personal property received by him for the use of the commonwealth and not paid over; and though the county is the debtor of the state for interest accrued and accruing on, and possibly for the principal of such taxes, the surety cannot require the state to look to the county, and it to the surety on the county bond." Elder v. Commonwealth, 55 Pa. 485, was an action on a state bond by the commonwealth for the use of Juniata county against the sureties on the bond of a county treasurer. The county auditors settled the accounts of the treasurer and found a balance due from him to the commonwealth for state taxes which the county paid. It was held that the county having paid the commonwealth the balance due by her for state taxes for which the treasurer was in default, might recover against the sureties on the state bond. The doctrine of subrogation was applied, and the county was reimbursed by an action for its use on the bond. It was not even suggested that there was any liability imposed by the county bond for the state taxes collected by the treasurer. The county's responsibility arose under the act of 1844, and when the auditors had determined the amount due from the treasurer to the commonwealth and he had failed to pay, the act required it to be "charged against such county on the books of the state treasurer." The liability of the county in such cases is not put on the ground that it is responsible for the treasurer, but on the positive words of the act of assembly which holds the county responsible for the taxes until paid into the state treasury : County of Schuylkill v. Commonwealth, 36 Pa. 524.

Neither the act of June 1, 1889, nor the act of June 8, 1891, has changed the mode of collecting state taxes, nor the liability imposed by the respective bonds required by the treasurer under the act of 1834, nor the manner of keeping accounts as required by that act. Under the late legislation a four-mill tax is imposed on personal property for state purposes, and it is provided that "three fourths of the net amount of taxes based on the

return of property subject to taxation for state purposes . . . . that is collected and paid into the state treasury by a county . . . . shall be returned by the state treasurer to such county . . . . for its own use in payment of the expenses incurred by it in the assessment and collection of said taxes." It is, therefore, clear from this statutory provision that the whole sum, and not the one fourth thereof, required to be collected for state purposes is a tax imposed by law, and is collected for the use of the commonwealth. Hence, nothing relieves the county from liability to the state for the tax but actual payment of the entire sum to the state treasurer: Commonwealth v. Philadelphia county, supra. It is a fund entirely distinct from that produced by county taxation and is due, and must be paid, to the commonwealth for whose use it was levied and collected. It is not subject to the control of, nor can it be applied by, the commissioners for any county use ; and until the whole sum is collected and paid to the state treasurer, the county is not entitled to three fourths of the fund with which to reimburse itself for the collection of the tax: Commonwealth v. Philadelphia County, supra.

2. Almost a century ago the legislature of this state declared that in all cases where a remedy was provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts should be strictly pursued ; and no penalty should be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than should be necessary for carrying such act or acts into effect. In the many years which have intervened since this statute became a law of the commonwealth, no court has heretofore failed or refused to enforce its positive mandate or hesitated to give due effect to its provisions. Notwithstanding the uniformity of action by the courts and the settled construction of the act, the judgment of the court below in the present case was entered in direct violation of its terms.

The Act of April 15, 1834, section 48, Purd. Dig. 447, pl. 10, provides that " the auditors of each county . . . . shall audit, settle and adjust the accounts . . . . of the treasurer . . . . of the county, and make report thereof to the court of common pleas of such county, together with a statement of the balance

due from or to such . . . . treasurer." The 49th section of
the act makes it the duty of the auditors to audit the accounts
of the county treasurer with the state treasurer and to make a
separate report to the court with a statement of the balance
due from or to the county treasurer.   The auditors are invested
with ample powers to enable them to perform the duties im-
posed upon them by the statute.   In discharge of these duties
the auditors are authorized to compel the appearance of wit-
nesses and the production of papers, to administer oaths, and to
commit persons for refusing to testify.   The act further pro-
vides that their report shall be filed in the court and shall
thereupon have the effect of a judgment against the officer if
he is indebted to the commonwealth or county.   An appeal
lies to the common pleas in favor of any party interested within
the time and on the terms provided by the statute.   If an ap-
peal results in a judgment or there is no appeal taken, execu-
tion may issue against the defaulting officer.

It will thus be seen that the legislature has created a special
tribunal with ample powers to settle and adjust the accounts
of the county treasurer with the commonwealth and the county,
and thereby to ascertain and determine what, if anything, is
due from the officer.   The statute, it will be observed, is im-
perative and provides that the auditors " shall audit, settle and
adjust the accounts of the . . . . treasurer."   The details of
the subsequent procedure are provided for until final adjudica-
tion by the appellate court.   Here then, is a complete and ef-
fective remedy or course of procedure directed by statute by
which the accounts of the treasurer shall be adjusted and the
balance, if any, due by him to the county or commonwealth as-
certained.   This, under the act of 1806, is the exclusive and
only method by which the treasurer of a county can be deter-
mined to be in default.   Such has been the uniform interpre-
tation put upon the statute by all the courts of the common-
wealth before which the question has been raised, and there is
not a single solitary decision to the contrary.   Sixty years ago
this court held, in Northumberland County v. Bloom, 3 W. &
S. 542, that a settlement of the account of a county treasurer
by the auditors unappealed from was conclusive against both
the county and the officer.   In Blackmore v. Allegheny County,
51 Pa. 160, Justice AGNEW, delivering the opinion, after refer-

ring to the act of 1834, by authority of which the accounts of
the county officers are to be audited, says : " Thus a special
tribunal has been created with all necessary judicial powers to
determine the indebtedness from or to the officer, and enforce
collection in due course of law ; and this under the provisions
of the 13th section of the act of March 21, 1806, precludes a
resort to an action at common law. The decision of this tri-
bunal is also conclusive, and cannot be inquired into, either by
the same tribunal at another time, or by a court of law, except
in the manner provided, upon an appeal by the county or the
officer. A long line of decisions has set this point at rest."
In Siggins v. The Commonwealth, 85 Pa. 278, an action on a
treasurer's official bond to recover a " balance in his hands not
shown by the auditors' settlement," Justice WOODWARD says :
" Blackmore v. Allegheny County, 51 Pa. 160, and the array
of precedents there collected, abundantly prove that the deci-
sion of the auditors on the accounts of the treasurer is controll-
ing, and cannot be inquired into either by the same tribunal at
another time, or by a court of law, except upon appeal. When
the accounts of Siggins, as treasurer of the county of Forest,
were adjusted in January, 1871, by a report from which there
was no appeal, the settlement was final and binding on all
parties and for all time." In Godshalk v. Northampton County,
71 Pa. 324, Justice WILLIAMS, speaking for the court, says :
" It is manifest from all the provisions of the statute, that it
is the duty of the auditors to ascertain and settle the amount
of public money received by any of the officers whose accounts
they are required to audit, whether they have settled or re-
fused to produce their accounts. The power of the auditors to
settle and adjust the accounts of such officers is not suspended
or held in abeyance by their neglect or refusal to settle or pro-
duce their accounts." In Northampton County v. Herman, 119
Pa. 373, Justice STERRETT, delivering the opinion, after stating
it to be the duty of the county auditors under the act of 1834
to audit the accounts of the county officers, says : " A special
tribunal is thus erected, with all necessary powers to bring be-
fore it the parties, witnesses, etc., determine the indebtedness
by or to the officer and enforce its collection. This, under the
provisions of the act of 1806, necessarily excludes every other
remedy except the appeal provided for ; and, if that is not taken

within the sixty days limited by the act, the decision of the auditors becomes final and conclusive, and cannot afterwards be inquired into either by the auditors themselves or by a court of law." To the same effect is Schuylkill County v. Boyer, 125 Pa. 226, where the present chief justice says: "It has been repeatedly held by this court that the act of April 15, 1834, which defines the powers and duties of the county auditors, constitutes a special tribunal for the settlement of the accounts of the officers named in it, with necessary authority to compel the attendance of witnesses and the production of papers, and to determine the indebtedness by or to the officer, and to enforce its collection." And in the recent case of Westmoreland County v. Fisher, 172 Pa. 317, our Brother FELL, citing some of the numerous authorities on the subject found in our reports, says: " Since the passage of the act (of 1834), it has been uniformly held that the special tribunal created by it for the settlement of the accounts of the county officers named is exclusive of all others, and that its decision if not appealed from is final and conclusive, and cannot be opened for the correction of errors or again inquired into by the auditors or by the court." Branch Township v. Youndt, 23 Pa. 182, was an action against a collector of road taxes and his sureties on his official bond, given in pursuance of a special act of assembly. The trial court held that until settlement of the account of the collector by the township auditors, no action would lie upon his bond. KNOX, J., in affirming the judgment, said: "This was correct. The liability of the sureties is contingent, and no resort can be had against them until the default of the principal is fixed. The township auditors have unquestioned jurisdiction to settle the account of the supervisor and collector, and their settlement unappealed from would be conclusive in an action upon the bond. If the supervisor neglected to appear upon notice and exhibit the state of his accounts, the auditors should have passed upon them in his absence, and unless evidence of payment were before them, they would have been justified in reporting a balance against him equal to the entire amount of the duplicate, which they could have ascertained without difficulty, as it was recited in the bond. The legislature has provided a local tribunal to determine primarily the amount of the receipts and expenditures by the officers whose duty it is to collect and

disburse the township revenues, and public policy coincides with the rules of law in requiring the remedy plainly pointed out to be pursued."

These are but a few of the many cases by which it is conclusively established that a common-law action will not lie against a county officer for an alleged shortage in his accounts with the county and that an adjustment of his accounts by the county auditors is a prerequisite to an action on his official bond. They show, if anything can be settled by the repeated decisions of this court, that the act of 1834 provides a complete and exclusive way in which the accounts of a county officer with the county and the commonwealth must be settled and the amount, if any, be ascertained to be due to or from the officer. It necessarily follows that until this tribunal has determined an amount to be due from an officer, he is not in default and no action will lie against him or his sureties on his official bond. This evidently was the view of the appellee, as its substitute statement avers what the original statement omitted, that the accounts of the treasurer had been audited by the county auditors. This, as appears by the affidavit of defense and is conceded, had not been done when this suit was brought, and even if done subsequently cannot avail the plaintiff here, as was correctly ruled by the Superior Court in Commonwealth v. Piroth, 17 Pa. Superior Ct. 586.

The learned trial judge supports his position that a suit will lie on the bond without the prior action of the county auditors in determining the sum due from the officer by saying, arguendo, that to await the action of the tribunal created by law to establish the officer's default might result in loss to the county by the death or insolvency of the sureties on the bond. With equal relevancy and force it may be suggested that both these events might occur and like consequences might result before the expiration of the officer's term prior to which time no action will lie on the bond. It is further said in support of the position of the court below that the county might be prejudiced by the delay attending the audit and final settlement of the officer's accounts. This proposition is sufficiently answered by the suggestion that no delay in the audit of the officers' accounts can occur unless the auditors fail to perform their duties, which we will not presume the court below, from which this appeal

was taken, would permit. It is further contended by the appellee that the action being on the bond, the default consists in the officer's failure to pay the "balance of money belonging to the county remaining in his hands," as required by the condition of the bond, and that it is a breach in the officer not to pay the money immediately on the expiration of his term, which imposes a liability on the sureties. For this reason, it is asserted that no prior settlement by the auditors is required. The fallacy of this argument lies in the fact that at that time the amount due has not been ascertained, and hence is not known. Suppose the officer would pay the amount he and the county then thought was due, and the subsequent audit of his accounts should show a sum far in excess or much less than was paid was really due the county, the mistake could not be corrected and one of the parties must suffer an injustice. Is it not, therefore, apparent that the proper interpretation of the condition of the bond did not require the officer to pay the balance to the county until it had been ascertained in the mode provided by law, and that consequently no action would lie until the county auditors had determined the sum due?

But if the county may bring suit on the bond without awaiting the action of the auditors, how is it to establish its claim before the court and jury? This requires, in the present case, a settlement of the accounts of the treasurer during at least one year of his term. The appellee contends that the amount due from the officer shall be ascertained from the "true and correct accounts" required by the act of assembly to be kept by him. I cannot imagine that the county or the sureties on the bond would want to accept as verity an account stated by a defaulting officer. The law requires him to keep an account with the county as well as with the state, but it concludes no party, except possibly the officer himself, and not him if a mistake should be made to appear in the settlement of his accounts by the auditors. To sustain this action, however, the county is driven to the position of accepting his accounts, and has attached copies of it to the statement to show the amount due from the sureties on the bond. Should the case reach a jury, that body wholly unfitted for the purpose must pass upon and determine the correctness of a long and intricate account. The case would be similar to Mothland v. Wireman, 3 P. & W. 185, in which

Chief Justice GIBSON says: " In the trial of the issue the jury were burdened with accounts which were proper for adjustment by no one but an auditor."

From the plaintiff's statement it appears that on January 1, 1900, there was due from the treasurer $126,661.44 which the affidavit of defense shows, and it is conceded, represents two funds, viz: $88,930.88, state taxes on personal property for 1899, and $42,730.61, county taxes for the year 1899. Of this amount the statement avers that there was paid to the county $61,623.50, leaving yet due $65,037.94. This is the total shortage according to the contention of the appellee. As conceded by all parties, and on the theory adopted by this court in Commonwealth v. Hershey, 200 Pa. 306, an action on the same treasurer's state bond, this sum represents two funds, $43,096.64, state taxes, and $21,941.30, county taxes. The default of the treasurer to the county is, therefore, by the appellee's own figures only $21,941.30, instead of $54,371.51, the amount declared by the court below to be due from the sureties on the bond and for which the court entered a judgment against them.

Commonwealth v. Hershey, supra, was an action brought for the use of Lancaster county against this same treasurer and his sureties on the state bond to recover that part of the deficit of $65,037.94 due the state and which the county had to pay. The same trial judge tried both cases, and in Commonwealth v. Hershey gave judgment in the action on the state bond for $44,072.94, the amount shown above as the state's share of the total deficiency. This court held that as three fourths of the $83,930.83 was required to be returned to the county by the state treasurer, there was but one fourth of that sum, $21,612.18, lost to the state by the defaulting of the officer, and the proportionate share of that sum, to wit: $10,666.43, could be recovered from the sureties on the state bond. In this case the trial judge erroneously concluded that as the total shortage was $65,037.94, and this court had held that but $10,666.43 belonged to the state, the residue of the total deficiency was due the county from the treasurer, and that, therefore, the sureties on the county bond were liable for that sum. The trial judge misapplied Commonwealth v. Hershey, and consequently brought about an erroneous conclusion. That

case did not determine the rights or liabilities of the sureties on the respective bonds, as is distinctly stated in the opinion where it is said: " We are not adjusting the equities between the sureties on the county bond and those on the state bond, but dealing only with the strict rights of the parties to this action."

Believing that the position taken by the majority of the court is in direct conflict with all prior rulings of this court, and that the decision will unsettle the well established practice of more than half a century in the audit and adjustment of the accounts of state and county officers by the controllers and auditors of the state, I have felt justified in citing the authorities bearing on the question raised on the appeal and in stating at some lengths the reasons why the judgment of the court below should be reversed.

I am authorized to say that Justice POTTER joins in this opinion and dissent.